UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

SHANISE SHIDAGIS,

                      Plaintiff,

v.                                            3:23-CV-1108
                                            (DNH/ML)

MANAGER AT CITGO GAS STATION,

                      Defendant.

_____

APPEARANCES:                               OF COUNSEL:

SHANISE SHIDAGIS
  Plaintiff, *Pro Se*
169 Hawley Street, ER-2-7
Binghamton, New York 13901

MIROSLAV LOVRIC, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

      The Clerk has sent a *pro se* complaint in the above captioned action together with an application to proceed *in forma pauperis*, filed by Shanise Shidagis ("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 2.)  For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application, and recommend that Plaintiff's Complaint be dismissed in its entirety without leave to amend.  (Dkt. Nos. 1, 2.)

## I.      BACKGROUND

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that on an unspecified

date, the Citgo Gas Station manager ("Defendant") kicked her, causing a contusion.  (*See*

*generally* Dkt. No. 1.)

Based on these factual allegations, Plaintiff asserts one claim of "assault."  (Dkt. No. 1 at

3.)  As relief, Plaintiff seeks damages in the amount of $600.00.  (Dkt. No. 1 at 4.)

## II.     PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's *in*

*forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.

Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[3]

Plaintiff is advised that the ability to litigate an action without prepayment of fees is a

privilege that can be denied, revoked, or limited based upon a showing of prior abuses.  *See In re*

---

[1]      The court must interpret *pro se* complaints to raise the strongest arguments they suggest.
*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790
(2d Cir. 1994)).

[2]      The language of that section is ambiguous because it suggests an intent to limit
availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1)
(authorizing the commencement of an action without prepayment of fees "by a person who
submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts
have construed that section, however, as making *in forma pauperis* status available to any litigant
who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed.
Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]      Plaintiff is reminded that, although her application to proceed *in forma pauperis* has been
granted, she is still required to pay fees that she may incur in this action, including copying
and/or witness fees.

*Anderson*, 511 U.S. 364, 365-66 (1994) (denying the *pro se* petitioner's request for leave to proceed IFP where the Court found that, like the previous twenty-two petitions filed during the three immediately preceding years, the instant petition was "patently frivolous"); *see also Cuoco v. United States Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) ("The ability to proceed IFP is a privilege provided for the benefit of indigent persons.").  The authority of a court to deny or limit a request to proceed IFP is implicit in the permissive, rather than compulsory, language of the controlling statute, which provides that "any court of the United States *may* authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor[.]"  28 U.S.C. § 1915(a)(1) (emphasis added); *In re McDonald*, 489 U.S. 180, 183 (1989).  For this reason, courts are regarded as possessing discretionary authority to deny IFP status to litigants who have abused the privilege.  *See Hurt v. Soc. Sec. Admin.*, 544 F.3d 308, 309-310 (D.C. Cir. 2008) (quoting *Butler v. Dep't of Justice*, 492 F.3d 440, 444-45 (D.C. Cir. 2007) ("This Circuit grants IFP status to various plaintiffs, but asserts its discretion to deny or revoke this privilege for abusive litigants, looking to 'the number, content, frequency, and disposition of their previous filings[.]'").

Plaintiff's litigation history in this district suggests that she is on the brink of being found to have abused the privilege of proceeding IFP.  In addition to the case currently before the Court, Plaintiff has filed seven other lawsuits in this district within the last twelve months.[4]  In

---

[4]      *Shidagis v. Broome Cnty. D.S.S.*, Case No. 3:22-CV-1224 (BKS/ML) ("*Shidagis I*"); *Shidagis v. Broome Cnty. Dep't of Soc. Servs.*, Case No. 3:22-CV-1299 (GTS/ML) ("*Shidagis II*"); *Shidagis v. Broome Cnty. Sheriff's Office*, Case No. 3:22-CV-1300 (DNH/ML) ("*Shidagis III*"); *Shidagis v. Broome Cnty. D.S.S.*, Case No. 3:23-CV-0031 (BKS/ML) ("*Shidagis IV*"); *Shidagis v. Dominguez*, Case No. 3:23-CV-0032 (BKS/ML) ("*Shidagis V*"); *Shidagis v. Citgo Gas Station*, Case No. 3:23-CV-0192 (DNH/ML) ("*Shidagis VI*"); and *Shidagis v. Broome Cnty. Sheriff's Office*, Case. No. 3:23-CV-1107 (DNH/ML) ("*Shidagis VII*").

six of the other actions, Plaintiff requested, and was granted, permission to proceed without prepayment of fees.  (*Shidagis I*, Dkt. No. 4; *Shidagis II*, Dkt. No. 4; *Shidagis III*, Dkt. No. 4; *Shidagis IV*, Dkt. No. 4; *Shidagis V*, Dkt. No. 5; *Shidagis VI*, Dkt. No. 4.)

Common to the other dismissed actions filed by Plaintiff in this district (including, as will be discussed below, the current Complaint under consideration in this report) is her failure to include factual allegations in her complaints that demonstrate that the Court has jurisdiction to consider her claims.[5]  Accordingly, Plaintiff is hereby cautioned that (1) proceeding IFP is a privilege that is extended to litigants at the discretion of the court, and (2) any further filing of patently frivolous lawsuits may result in the denial of any request to proceed IFP in an action and/or a recommendation to the Chief District Judge that a filing injunction be issued against Plaintiff, barring her from filing any future lawsuits in this district without prior permission.

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In addition, the Court shall dismiss any action where the Complaint fails to allege facts plausibly suggesting subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is a "threshold question that must be resolved . . . before proceeding to the merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*,

---

[5]     The Court also notes that the allegations contained in Plaintiff's Complaint here are almost identical to the facts alleged and claims that were dismissed in *Shidagis VI*.  (*Compare* Dkt. No. 1*, with Shidagis VI*, Dkt. No. 1.)

762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court

must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of*

*Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal

of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*,

15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review,

action challenging state court mortgage foreclosure judgment because the court lacked

jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005)

(citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d

Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint

for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter

jurisdiction.").

     "In reviewing a complaint . . . the court must accept the material facts alleged in the

complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v.*

*Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

     Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d

66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam)

(reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint

sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua

sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties .

. . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

IV.     **ANALYSIS**

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

The Court lacks subject matter jurisdiction over this case.  Federal courts are courts of limited jurisdiction and must independently verify the existence of subject matter jurisdiction before proceeding to the merits.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *Doe v. United States*, 833 F.3d 192, 196 (2d Cir. 2016).  "Congress has granted district courts original jurisdiction over cases in which there is a federal question, *see* 28 U.S.C. § 1331, and certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met, *see* 28 U.S.C. § 1332."  *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013).  "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.  If subject matter jurisdiction is lacking, the action must be dismissed."  *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) (citations omitted); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3).  The plaintiff bears the burden of establishing subject matter jurisdiction.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Here, there is no "federal question" jurisdiction because the claim of "assault" is a state law claim.  *Harris v. Lewis*, 22-CV-6953, 2022 WL 10642676, at *2 (S.D.N.Y. Oct. 17, 2022) ("The only way that Plaintiff's allegations of assault would rise to the level of a federal claim is if the assault was perpetrated by a state actor. . . . Instead, Plaintiff is suing a private individual

for assault, and he has not pleaded facts showing that his claim arises under federal law.  There is, therefore, no basis for federal question jurisdiction."); *Phillips v. Town of Hebron*, 16-CV-1726, 2017 WL 3387133, at *6 (D. Conn. Aug. 7, 2017) ("Plaintiff's claims for assault are plainly state law claims that do not present any federal question."); *see also Wilson v. Neighborhood Restore Dev.*, 18-CV-1172, 2018 WL 2390143, at *3 (E.D.N.Y. May 18, 2018) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 182 (2d Cir. 2015)) (holding that "personal injury . . . [is a] state law claim[]" that does not raise any federal question for purposes of jurisdiction).

In addition, because the complaint alleges that Plaintiff and Defendant are citizens of New York (Dkt. No. 1 at 3), there is no diversity jurisdiction.  *Lever v. Lyons*, 16-CV-5130, 2021, WL 302648, at *9 (E.D.N.Y. Jan. 28, 2021) (no diversity jurisdiction where parties were all citizens of New York).  Moreover, the amount at stake does not appear to be more than $75,000.  (Dkt. No. 1 at 4.)

As a result, I recommend that Plaintiff's claims be dismissed for lack of subject matter jurisdiction.

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding*

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

Here, leave to amend would be futile.  As a result, I recommend that Plaintiff's claims be dismissed without leave to amend.  *See Vazquez v. New York*, 22-CV-0196, 2022 WL 2390248, at *6 (N.D.N.Y. June 30, 2022) (Hummel, M.J.) (recommending dismissal without leave to amend the plaintiff's defamation claim because, *inter alia*, "plaintiff has not established jurisdiction."), *report and recommendation adopted by*, 2022 WL 3100553 (N.D.N.Y. Aug. 4, 2022) (Suddaby, C.J.).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) because the Court lacks subject matter jurisdiction to consider the claim stated therein; and it is further

---

[6]      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).[9]

Dated: September  29 , 2023
       Binghamton, New York

*Miroslav Lovric*

Miroslav Lovric
U.S. Magistrate Judge

---

[7]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[8]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

[9]     Plaintiff is reminded that she must immediately notify the Court of any change of address consistent with N.D.N.Y. L.R. 10.1(c)(2), and that her failure to notify the Court of a change of address could result in the involuntary dismissal of her cases for failure to prosecute pursuant to Fed. R. Civ. P. 41(b) and N.D.N.Y. L.R. 41.2(b).

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 10 of 55

2018 WL 4185705
Only the Westlaw citation is currently available.
<u>For Online Publication Only</u>
United States District Court, E.D. New York.

Nicholas TALLEY, Donna Evans Talley, Plaintiffs,

v.

LOANCARE SERVICING, DIV. OF
FNF, Selene Finance, Defendants.

15-CV-5017 (JMA) (AKT)
|
Signed 08/31/2018

**Attorneys and Law Firms**

Donna Evans Talley, Nicholas Talley, pro se.

Stuart L. Kossar, Esq., Knuckles, Komosinski & Manfro, LLP, 565 Taxter Road, Suite 590, Elmsford, New York 10523, Attorney for Defendant Selene Finance, LP.

Edward Rugino, Rosicki, Rosicki and Associates, P.C., 51 East Bethpage Road, Plainview, New York 11803, Attorney for Defendant LoanCare Servicing.

**MEMORANDUM AND ORDER**

Joan M. Azrack, United States District Judge

 **\*1**  On August 18, 2015, Donna Evans Talley and Nicholas Talley (together "plaintiffs" or the "Talleys") filed a *pro se* complaint in this Court against Selene Financing ("Selene") and LoanCare Servicing, Division of FNF ("LoanCare") (together "defendants"). On January 21, 2016, the Court granted plaintiffs' applications to proceed *in forma pauperis*, but dismissed the complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiffs were given an opportunity to file an amended complaint. On February 16, 2016, plaintiffs filed an amended complaint, which seeks, among other things, injunctive relief to "[s]top illegal and fraudulent foreclosure." (Am. Compl. at 4.) Simultaneous with the filing of the amended complaint, plaintiffs filed an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order seeking to enjoin LoanCare from pursuing a foreclosure sale scheduled for March 3, 2016. In an Order dated February 24, 2016, this Court, *sua sponte* dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the

prayer for injunctive relief in plaintiffs' amended complaint and denied plaintiffs' request for a preliminary injunction and temporary restraining order. Before the Court are defendants' motions to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety.

**I. BACKGROUND**

The following facts are taken from plaintiffs' amended complaint, the record before the Court and fillings from the foreclosure action. In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of public records, including state court filings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The Court can also consider exhibits—such as copies of the mortgage and mortgage assignments—which are attached or integral to the amended complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

**A. The Bay Shore Mortgage**

On March 7, 2009, Nicholas Talley and Donna Evans Talley executed a mortgage in favor of non-party Lend America (the lender) in the principal sum of $311,558 concerning a property located at 22 Lakeland Street, Bay Shore, New York ("the Bay Shore property"). (Am. Compl., ECF No. 7 at 15-16.) Plaintiffs claim that there was no recording of the original title or delivery of the mortgage or deed to plaintiffs. (Id. at 5.) Plaintiffs further allege that Lend America became defunct in December of 2009 and that no assignments of the mortgage occurred prior to 2012. (Id.) By way of an endorsement to the note and two assignments of the mortgage, the loan instruments were transferred to defendant LoanCare on February 27, 2012. (Id. at 5, 8-12.) The assignment to LoanCare was recorded on April 10, 2012 in the Suffolk County Clerk's Office. (Id. at 5.) On March 31, 2015, LoanCare assigned the mortgage to defendant Selene. (Id. at 24-25.)

**B. The Foreclosure Proceeding**

 **\*2**  Plaintiffs defaulted on the note and mortgage by failing to make their monthly payment due in January 2011 and each month thereafter. (Kossar Decl. Ex. J, ECF No. 42-11 at 3.) As a result, LoanCare commenced an action against

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 11 of 55

plaintiffs in New York State Supreme Court, Suffolk County on March 19, 2012. (Id.) In the Talleys' verified joint answer, they admitted their default in payments but requested a judicially mandated loan modification. (Id. at 8.) The state court denied the Talleys' request, noting that after numerous prior attempts the parties had not been able to reach an agreement to modify the loan or settle the action. (Id.) The Talleys also asserted fifteen affirmative defenses, alleging, among other things: lack of personal jurisdiction; lack of standing and legal capacity; fraud in connection with the origination and the servicing of the loan; lack of good faith with respect to a loan modification; and LoanCare's failure to state a cause of action, mitigate damages and comply with the provisions of Real Property Actions and Proceedings Law and Banking Law. (Id. at 3.) LoanCare moved for summary judgment against the Talleys seeking to strike their answer and dismiss their affirmative defenses amongst other relief. (Id.) The Talleys opposed the motion and cross moved for summary judgment seeking dismissal of the complaint on the grounds that LoanCare lacked standing. (Id. at 4.)

In an Order dated April 11, 2014, the state court denied the Talleys' cross motion for summary judgment in its entirety. (Id.) In response to the Talleys' lack of standing defense, the court found that, "as holder of the endorsed note and as the assignee of the mortgage, [LoanCare] ha[d] standing to commence [the foreclosure] action. (Id. at 5.) The court noted that LoanCare demonstrated that it had been in "continuous possession of the note and mortgage since February 27, 2012," concluding that LoanCare "is the transferee and holder of the original note as well as the assignee of the mortgage by virtue of the written assignments." (Id. at 6.) In sum, the court held that LoanCare satisfied its *prima facie* burden as to the merits of the foreclosure action as it produced the endorsed note, the mortgage and assignments as well as evidence of plaintiffs' nonpayment. (Id. at 5.) Further, the court noted that LoanCare submitted proof of its compliance with the notice requirements of the 🚩RPAPL § 1303 and 🚩§ 1304. (Id.) Thus, the court found that LoanCare established its entitlement to summary judgement and dismissed the Talleys' remaining affirmative defenses finding that plaintiff submitted sufficient proof to establish, *prima facie*, that such defenses were unmeritorious. (Id. at 5, 7-9.) (noting that circumstances of fraud must be "stated in detail" and that a defense based upon the "doctrine of unclean hands" lacks merit where a defendant fails to come forward with admissible evidence of immoral or unconscionable behavior). The court also noted that the Talleys "failed to demonstrate that they made a reasonable attempt to discover the facts

which would give rise to a triable issue of fact or that further discovery might lead to relevant evidence." (Id. at 8.) The court further rejected the Talleys' contention that they were entitled to a judicially mandated loan modification and ordered the appointment of a referee to compute amounts due under the subject note and mortgage. (Id. at 8, 9.)

On September 29, 2014, the state court entered final judgment for foreclosure and sale of the Bay Shore property. (Kossar Decl. Ex. K, ECF No. 42-12 at 3-8.) The state court further ordered that LoanCare was entitled to judgment establishing the validity of the mortgage and to recover $390,013.50 with interest to date of the closing of time of the referee's sale of the subject property. (Id.)

## C. The Instant Action

Plaintiffs' amended complaint alleges fraud against defendants LoanCare and Selene along with other claims under: (1) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, § 2608; (2) federal regulation 24 C.F.R. § 203.350 [1] associated with the National Housing Act, 12 U.S.C. § 1701; (3) various provisions of the Uniform Commercial Code ("UCC"); (4) the Pooling and Servicing Agreement ("PSA") that governs plaintiffs' mortgage; and (5) fraud. [2] (Amend. Compl.) Though stated somewhat differently, plaintiffs' amended complaint appears to reiterate their contentions from the prior state court foreclosure action, specifically alleging that LoanCare did not have standing to foreclose on the Bay Shore property and that the mortgage and its assignment to LoanCare, and subsequently to Selene, were invalid and therefore unenforceable. [3] (See Am. Compl.)

**\*3** Specifically, plaintiffs allege that the original deed has never been delivered since the inception of the mortgage. (Id. at 3.) Plaintiffs claim that although the original lender, Lend America ceased to exist as of December 2009, the mortgage was never assigned in the years 2009 through 2012. (Id.) Plaintiffs allege that Lend America "acquired the loan without providing principal/issuer resulting in no securitization of an FHA security instrument from 2009-2012." (Id.) Plaintiffs appear to allege that "no delivery of deed and title" concerning plaintiffs' mortgage "proves deceptive practices and fraud was the intention from the origination of the mortgage." (Id.) Plaintiffs further allege that defendants have no standing under Article III of the Constitution because the original title was not recorded or delivered to plaintiffs. (Id. at 5-6.) Finally, plaintiffs allege that "even if this was a legal foreclosure, we were not given our due process because we were not

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 12 of 55

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

notified by LoanCare or the Court of our Right to Appeal thereby denying us 'due process'." [4] (Id. at 6.) Specifically, plaintiffs allege that they did not receive the Notice of Entry of Final Judgment for Foreclosure and Sale from LoanCare until February 6, 2015 and that the September 29, 2014 judgment is in violation of the PSA, RESPA and the UCC because the mortgage and note were transferred to Selene on August 1, 2014. [5] (Id.)

Plaintiffs seek the following relief: "[d]efendants produce orig[inal] deed of mortgage, title with covenants"; "[r]eimburse[ment] [of] \$4,336 for services not rendered (deed/title)"; "[p]rove securitization of mortgage from 2009 to present"; "[p]roduce chain of assignment"; "[e]xplain no recordation of closing documents"; "[r]eveal identity of principal/issuer"; "LoanCare cease and desist from harassing us and placing us under duress since the mortgage has been sold to Selene"; "[s]top illegal and fraudulent foreclosure by prior servicer, LoanCare without assignment." (Id. at 4.)

Defendants filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that plaintiffs' claims should be dismissed because (a) they are barred by the *Rooker-Feldman* doctrine; (b) are barred by the doctrines of *res judicata* and collateral estoppel; and (c) fail to state a claim upon which relief can be granted. [6]

## II. DISCUSSION

### A. Standard of review

The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." Bobrowsky, 777 F. Supp. 2d at 703 (internal quotation marks and citations omitted).

### 1. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or

constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. Id. In reviewing a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b) (1) ... does not convert the motion into a motion for summary judgment under Rule 56.").

### 2. Fed. R. Civ. P. 12(b)(6)

**\*4** To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Motions to dismiss invoking *res judicata* and collateral estoppel are properly brought under Rule 12(b)(6). See Hirsch v. Desmond, No. 08–CV–2660, 2010 WL 3937303, at \*2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); Wiercinski v. Mangia 57, Inc., No. 09–CV–4413, 2010 WL 2681168, at \*1 (E.D.N.Y. July 2, 2010) (*res judicata*).

### B. *Rooker-Feldman* Doctrine

Defendants' initial argument is that this Court lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can

Case 3:23-cv-01108-DNH-ML    Document 5    Filed 09/29/23    Page 13 of 55

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

entertain a direct appeal from a state court judgment);
*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483, n.3 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determinations). The *Rooker–Feldman* doctrine "recognizes that 'federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.' " Alston v. Sebelius, CV 13-4537, 2014 U.S. Dist. LEXIS 123613, at *23-24 (E.D.N.Y. July 31, 2014) (report and recommendation), adopted by, 2014 U.S. Dist. LEXIS 122970, 2014 WL 4374644 (E.D.N.Y. Sept. 2, 2014) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court determinations." Park v. City of N.Y., No. 99–Civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The Second Circuit has established four requirements that must be satisfied for the *Rooker–Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of the judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural and the second and third are substantive. Id.

Specifically, with respect to foreclosure proceedings, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." Ashby v. Polinsky, No. 06–CV–6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citation omitted), aff'd, 328 F. App'x 20 (2d Cir. 2009); see also Done v. Wells Fargo Bank, N.A., No. 08–CV–3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); Ward v. Bankers Trust Co. of California, N.A., No. 09– CV–1943, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011).

This even includes challenges to a judgment of foreclosure that was allegedly procured by fraud, as plaintiffs have alleged herein. See, e.g., Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 164–65 (E.D.N.Y. 2010) aff'd, 446 F. App'x 360, 361 (2d Cir. 2011) (finding *Rooker–Feldman* doctrine applied to allegations that defendants engaged in a pattern of submitting fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts and that the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); Parra v. Greenpoint Mortgage Co., No. Civ.A. 01–CV–02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker–Feldman*"); Dockery v. Cullen & Dykman, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

*5 In the instant case, *Rooker-Feldman* bars plaintiffs' claims. The procedural requirements of *Rooker–Feldman* are satisfied. First, plaintiffs lost in state court. (Kossar Decl. Exs. J, K.) Second, the state court granted LoanCare summary judgment and denied plaintiffs' cross-motion for summary judgment by Order dated April 9, 2014, and issued a foreclosure judgment on September 29, 2014. (See id.) Since these judgments predate the August 18, 2015 filing of the initial complaint in the instant action, (see Compl., ECF 1), all pertinent state-court decisions were issued before the proceedings in this Court commenced.

The substantive requirements of *Rooker–Feldman* are also satisfied because plaintiffs' amended complaint seeks review and rejection of those state court decisions. Plaintiffs' claims complain of injuries, including, "deceptive practices and fraud" at the origination of the mortgage due to no delivery or recording of closing documents and seeks to "[s]top illegal and fraudulent foreclosure," in contravention of the state court judgment of foreclosure and the state court's acceptance of the validity of the mortgage documents that formed the basis for that judgement. (Am. Compl. at 4-6.) See Trakansook v. Astoria Fed. Sav. & Loan Ass'n, No. 06–CV–1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), aff'd, No. 07–2224–CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008) (holding that because plaintiff's complaint asked the court "to vacate the judgment of foreclosure and sale and award her title to the property, it [was] plain that she [was] inviting [the] court to 'reject' the [state court] order."); Done v. Option One Mortgage, No. 09–civ–4770, 2011 WL 1260820,

Case 3:23-cv-01108-DNH-ML Document 5 Filed 09/29/23 Page 14 of 55

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

at *6 (E.D.N.Y. Mar. 30, 2011) (concluding substantive requirements of *Rooker-Feldman* met where "[a]lthough plaintiff ha[d] made a cursory reference to seeking monetary damages, it [was] abundantly clear that the whole purpose of th[e] action [was] to undo the foreclosure judgment").

In their amended complaint, plaintiffs contend that LoanCare had no standing to bring the state court foreclosure action. (*See* Am. Compl.) However, as plaintiffs admit, the state court rejected this exact contention in its final judgment. (Pls.' Supplemental Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 43 at 4; Kossar Decl. Ex. J at 7 ("The assertions by the defendant mortgagors as to the plaintiff's alleged lack of standing, which rest, *inter alia*, upon alleged defects in the assignments, rife with speculation, are rejected as unmeritorious ...").) In opposition to defendants' motion to dismiss, plaintiffs specifically state that they are seeking "[r]escission of [f]inal [s]ummary [j]udgment", that this Court "[r]ender [t]he lien unenforceable due to fraudulent concealment", and seek "[d]ismissal of the [f]oreclosure due to lack of [s]tanding." (Pls.' Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 39-12.) Plaintiffs are requesting this Court to do exactly what *Rooker-Feldman* forbids— to overturn the New York Supreme Court judgment of foreclosure. See 🚩 Trakansook, 2007 WL 1160433, at *5 ("Because [plaintiff's] complaint asks this court to vacate the judgment of foreclosure and sale and award her title to the property, it is plain that she is inviting this court to 'reject' the [state court order]."). A ruling in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, ... which is precisely the result that the *Rooker–Feldman* doctrine seeks to avoid."

🚩 ⚠ Kropelnicki v. Siegel, 290 F.3d 118, 129 (2d Cir. 2002).

Moreover, plaintiffs' attempt to thwart application of *Rooker-Feldman* by labeling their claims as "fraud in the inducement" and "fraudulent concealment" rather than the "fraud" they alleged in the state action fails. Plaintiffs' claim of "newly discovered facts of fraud in the inducement" based on the actions of third parties at the time of the loan origination fails to preclude application of *Rooker-Feldman*. [7] (Pls.' Opp. to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Plaintiffs' claims relate not to defendants' conduct in the course of the state court foreclosure action, but, rather, to the validity of the underlying mortgage documents and defendants' standing to commence the foreclosure proceeding. Thus, "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the

mortgage[ ] w[as] valid." Webster v. Wells Fargo Bank, N.A., No. 08–civ–10145, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), aff'd sub nom. as amended (Jan. 24, 2012) Webster v. Penzetta, 458 F. App'x 23 (2d Cir. 2012) (finding the Court "plainly lack[ed] subject matter jurisdiction" over plaintiff's claims "attacking the validity of the foreclosure proceedings and the validity of the underlying mortgage loan documents" pursuant to *Rooker-Feldman* because "the injury complained of is the judgment permitting foreclosure, which implicitly held that the mortgages were valid."); see also Feliciano v. U.S. Bank Nat. Ass'n, No. 13–CV–5555, 2014 WL 2945798, at *2–4 & n. 7 (S.D.N.Y. June 27, 2014) (finding that plaintiffs' claims that "[defendant] wrongfully foreclosed upon their home because it lacked the legal capacity to accept the assignment of the underlying mortgage, and therefore lacked standing in the Foreclosure Action" failed under *Rooker-Feldman* and the fraud exception did not apply because "the complaint alleges fraudulent conduct (generally) by defendant prior to the institution of the Foreclosure Action rather than on the state court itself." (internal citations and quotations omitted) ). Therefore, plaintiffs attempt to invoke a fraudulent procurement exception to the *Rooker–Feldman* doctrine fails.

*6 Accordingly, the Court lacks subject matter jurisdiction over plaintiffs' claims and the amended complaint should be dismissed in its entirety.

## C. *Res judicata*

Alternatively, to the extent the *Rooker-Feldman* doctrine does not deprive the Court of subject matter jurisdiction, all of plaintiffs' claims are barred by the doctrine of *res judicata*. Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." 🚩 Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (quotation omitted). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). Further, federal courts must apply the doctrine of *res judicata* according to the rules of the state from which the judgment is taken. See 🚩 Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Giardina v. Nassau Cnty., No. 08–CV–2007, 2010 WL 1850793, at *3 (E.D.N.Y. May 7, 2010). New York State courts apply a transactional analysis, "barring a later claim arising out of the same factual grouping as an earlier litigated

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 15 of 55

claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burka, 32 F.3d at 657 (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ); see Done, 2009 WL 2959619, at *3 (same).

*Res judicata* applies when there was: (1) a previous action that resulted in a final adjudication on the merits, (2) the party against whom *res judicata* is to be invoked was party to the previous action or in privity with a party to that action, and (3) the claims involved in the current case were, or could have been, raised in the previous action. Swiatkowski, 745 F. Supp. 2d at 171 (quoting Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 155 (2d Cir. 2005) ). *Res judicata* applies to defenses that could have been raised in the prior action as well. Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (*res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided") (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) ); Robbins v. Growney, 229 A.D.2d 356, 645 N.Y.S.2d 791, 792 (N.Y. App. Div. [1st] Dep't 1996) ("The doctrine of *res judicata* is applicable ... to defenses raised in the prior action or which, though not raised, could have been.") (internal citation omitted). "All litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata*. Done, 2009 WL 2959619, at *3.

Here, plaintiffs' claims are barred from further adjudication by *res judicata*. First, the judgment of foreclosure entered against plaintiffs is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and which would disturb LoanCare's (or Selene's) ability to enforce rights provided pursuant to the mortgage and the note securing the Bay Shore property. See id. at *4. Second, the facts pled by plaintiffs in their amended complaint—that LoanCare brought the foreclosure suit in the Suffolk County Supreme Court and was not the holder of a valid mortgage note at the time of assignment, (see Am. Compl.)—would have been central to deciding any entitlement to a judgment of foreclosure, and thus demonstrates that their claims in the current suit arise from the same transaction as LoanCare's claim in the previous foreclosure action. Done, 2009 WL 2959619, at *4. Plaintiffs' claims arising from the origination of the mortgage and attacking the ability of defendants to enforce it in the foreclosure proceedings, (see Am. Compl.), not only could have been raised as a defense to foreclosure in the state court, but were actually raised, (see Kossar Decl.

Exs. I, J) and therefore cannot be relitigated in this Court. See, e.g., Hinds v. Option One Mortg. Corp., No. 11–CV–6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (report & recommendation), adopted by 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim ... [since the plaintiff's claims] arise from the same factual grouping—namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a state court foreclosure proceeding"); Solomon v. Ocwen Loan Servicing, LLC, No. 12-CV-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); Swiatkowski, 745 F. Supp. 2d at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings."); Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL 1787710, at *6 n. 2 (S.D.N.Y. June 23, 2009) ("Plaintiff's allegations of fraud regarding the underlying loan transaction do not appear to be of the type recognized by certain courts as immune from *res judicata*."); Yeiser v. GMAC Mortg. Corp., 535 F.Supp.2d 413, 421 (S.D.N.Y. 2008) ("According to New York law, ... *res judicata* ... applies to defenses that could have been litigated, including defenses to a foreclosure.").

**\*7** Whether cast as violations of RESPA, or regulations governing the National Housing Act, plaintiffs effectively allege that defendants improperly obtained the foreclosure judgment due to lack of standing based on fraud or "fraud in the inducement". (See Am. Compl.) However, plaintiffs asserted these claims, *albeit* in different form, in the state foreclosure action as affirmative defenses in their verified answer, in their opposition to LoanCare's summary judgment motion, and in support of their own cross motion for summary judgment. (Kossar Decl. Exs. I, J.) Specifically, in the state action, plaintiffs alleged that LoanCare had no standing to bring a foreclosure action, had "unclean hands," and misled, overcharged and defrauded plaintiffs in the mortgage application, closing and servicing process. (Id., Ex. I at ¶¶ 3,

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 16 of 55

8, 14, 18) The state court considered and ultimately dismissed plaintiffs' affirmative defenses and denied plaintiffs' summary judgment; instead, granting summary judgment in LoanCare's favor. (Kossar Decl. Ex. J.) "If plaintiffs were unhappy with the result of that proceeding, the proper recourse was a state court appeal. Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for foreclosure, the doctrine of *res judicata* bars this litigation." Yeiser, 535 F. Supp. 2d at 422 (citing 12 U.S.C. § 2614, which authorizes an action, pursuant to the provisions of RESPA, to be brought in the federal district court or in any other court of competent jurisdiction in which the property involved is located, or where the violation is alleged to have occurred); Mercado v. Playa Realty Corp., No. CV 03-3427, 2005 WL 1594306, at *7 (E.D.N.Y. July 7, 2005) (determining that because plaintiff could have asserted the new claims she was raising in her federal action during the foreclosure action as counterclaims and the relief sought by plaintiff was inconsistent with the ruling in the foreclosure action, the new claims were barred by the doctrine of *res judicata*). [8]

Lastly, the present action satisfies the privity requirement for claim preclusion since LoanCare commenced the foreclosure proceeding and is a named party to the current action. Further, Selene, a non-party to the earlier state court action may still invoke claim preclusion if it can demonstrate that it was in privity with a party to the earlier action. See Houdet v. U.S. Tennis Ass'n, No. 13-CV-5131, 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application" (internal quotation marks omitted) ). "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action.' " Modular Devices, Inc. v. Alcatel Alenia Space Espana, No. 08-CV-1441, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) ). Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*. Yeiser, 535 F. Supp. 2d at 423.

The facts alleged in the amended complaint establish privity between Selene and LoanCare, as LoanCare assigned the mortgage to Selene on March 31, 2015—after final judgment in the state foreclosure action. See Yeiser, 535 F. Supp. 2d at 423 ("[s]ince the loan was transferred to GRP in May 2005," almost one year after the state foreclosure action, "GRP is a successor to that interest and is also in privity with [the original note holder]," which was the plaintiff in the foreclosure litigation); Hinds, 2012 WL 6827477, at *4 n.8 (finding the privity requirement satisfied where Wells Fargo was not a party in the state court proceeding, but bought the subject property at a foreclosure sale, rendering it a successor in interest). Thus, the requirements of *res judicata* are satisfied here.

Therefore, to the extent *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over plaintiffs' claims, the claims are barred by the doctrine of *res judicata* and must be dismissed.

### D. Collateral Estoppel

Plaintiffs' claims are also precluded under the narrower doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same.' " Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Whether relitigation of an issue is precluded is determined by the rules of the court that rendered the prior judgment. Id. "Under New York law, the doctrine of collateral estoppel requires that 'the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action.' " Hines v. HSBC Bank USA, No. 15-CV-3082, 2016 WL 5716749, at *9 (E.D.N.Y. Sept. 30, 2016) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) ). Thus, "[b]efore collateral estoppel can be invoked, the court must find that an identical issue was necessarily decided in the prior action and is decisive of the present action, and that there was a full and fair opportunity to contest the decision now said to be controlling." Yeiser, 535 F. Supp. 2d at 424 (internal citation omitted).

**\*8** "To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories

**Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)**

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 17 of 55

underlying the complaint." Id. at 424-25 (citing Coveal v. Consumer Home Mortgage, Inc., 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005) ) "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id. (finding collateral estoppel to be applicable where all the facts giving rise to the amended complaint were presented in the foreclosure proceeding even though plaintiffs did not allege all of the same causes of action).

Here, plaintiffs had a full and fair opportunity to litigate the factual issues raised in the amended complaint in the state foreclosure action. And, those issues were decided in LoanCare's favor. As discussed *supra*, plaintiffs already challenged the validity of the assignment of the mortgage to LoanCare and its standing to foreclose on the Bay Shore property in state court, and the state court necessarily rejected those arguments when it found LoanCare had a valid claim to the Bay Shore property and entered judgment of foreclosure on that property. No appeal was filed in that action. Accordingly, plaintiffs cannot relitigate these issues against defendant LoanCare in federal court. See Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 505–06 (S.D.N.Y. 2016).

Plaintiffs are also precluded from litigating these same issues against Selene, despite the fact that Selene was not a party to the initial suit in state court. See Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary."); see also Fequiere v. Tribeca Lending, No. 14-CV-812, 2016 WL 1057000, at *9–10 (E.D.N.Y. Mar. 11, 2016) (applying defensive non-mutual collateral estoppel to FDCPA claim).

Accordingly, the Court grants defendants' motions to dismiss plaintiffs' claims because they are precluded pursuant to the doctrine of collateral estoppel.[9]

**E. Sanctions**

Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), defendant LoanCare seeks to impose sanctions on plaintiffs in the form of attorneys' fees incurred in defendant's defense of the instant action. (Def. LoanCare's

Mot. to Dismiss, ECF No. 39-7 at 19-20.) For the reasons discussed below, defendant's motion is denied.

As an initial matter, the Court notes that LoanCare has not satisfied the procedural requirements for filing a sanctions motion. Rule 11 requires that a motion for sanctions "be made separately from any other motion and ... describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). In any event, the Court denies LoanCare's motion for sanctions. Plaintiffs' claims against defendants are plainly without merit. Nevertheless, this alone does not warrant sanctions, particularly as plaintiff is proceeding *pro se*. Although Rule 11 does apply to *pro se* litigants, the court may take into account the "special circumstances of litigants who are untutored in the law," Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989), as well as whether such a litigant has been warned of the possible imposition of sanctions. See Kuntz v. Pardo, 160 B.R. 35, 40 (S.D.N.Y. 1993); see also Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendments (stating that the court should consider, *inter alia*, whether the motion was made in bad faith). There are no facts indicating that plaintiff instituted or maintained this lawsuit in bad faith or that they were warned of the imposition of sanctions. For all of the above reasons, LoanCare's request for sanctions is denied.

**F. Leave to Amend**

**\*9** *Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation omitted). Nevertheless, "a district court may deny a *pro se* plaintiff leave to amend when amendment would be futile." Boddie v. N.Y. State Div. of Parole, No. 08-CV-911, 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009).

Here, the Court has carefully considered whether plaintiffs should be granted leave to amend the complaint. Having decided plaintiffs' claims are barred by *Rooker-Feldman, res judicata* and collateral estoppel, the Court finds that any amendment of these claims would be futile. For these reasons, the Court declines to grant plaintiffs leave to amend.

**III. CONCLUSION**

**Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)**

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 18 of 55

For the reasons stated above, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety. The Clerk of Court is directed to close this case and send a copy of this Order to *pro se* plaintiffs.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4185705

# Footnotes

1    Plaintiffs also allege a violation of 24 C.F.R. § 203.35 in their amended complaint, (Am. Compl. at 5), but note in their opposition to defendant LoanCare's motion to dismiss that this was an error. (Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 3.)

2    Though the amended complaint seeks relief from "LoanCare harassing us and placing us under duress" (Am. Compl. at 5-6), the only allegation of such harassment appears in plaintiffs' opposition to defendant LoanCare's motion to dismiss. (See Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 5-6.) A plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss", K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013). In any event, plaintiff's conclusory assertions of harassment are insufficient to state any plausible claims.

3    The Court notes that plaintiffs appear to use the terms "fraud", "fraudulent concealment" and "fraud in the inducement" interchangeably.

4    To the extent that plaintiffs attempt to allege a due process violation under 42 U.S.C. § 1983, such claim is unwarranted as the defendants are private parties, not state actors.

5    According to the loan transfer documents attached to plaintiffs' amended complaint, the mortgage and note were transferred to Selene on March 31, 2015. (See Am. Compl. at 23-24.) However, Selene first became involved with plaintiffs' loan when it became a servicer of the loan on August 1, 2014. (Pls.' Opp. to Def. LoanCare's Mot. to Dismiss, ECF No. 35-1, Ex. H at 17.)

6    Plaintiffs filed for Chapter 13 bankruptcy on June 5, 2017. (Pls.' Opp. to Mot. to Dismiss, Ex. J, ECF No. 35 at 37.)

7    Plaintiffs appear to allege newly discovered facts in relation to the alleged fraudulent closing of the mortgage in 2009. (Pls.' Opp to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Specifically, plaintiffs now argue, in conclusory fashion, that at the time of the closing of their mortgage in 2009, the Title Company was a "shell company" and the attorney at the closing table was fraudulent. (Id.)

8    "Although New York's permissive counterclaim rule means that res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action, this exception for counterclaims does not permit an attack on a judgment" previously issued by the state court. Beckford v. Citibank N.A., No. 00 Civ. 205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (internal quotation omitted).

9    Because plaintiffs' claims fail under *Rooker-Feldman, res judicata* and collateral estoppel, the Court need not reach the defendants' alternative arguments in support of dismissal.

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01108-DNH-ML    Document 5    Filed 09/29/23    Page 19 of 55

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 10642676
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Kadar A. HARRIS, Plaintiff,

v.

Emmanuel LEWIS, Defendant.

22-CV-6953 (LTS)
|
Signed October 17, 2022

**Attorneys and Law Firms**

Kadar A. Harris, New York, NY, Pro Se.

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff, who is appearing *pro se*, brings this action
invoking the Court's federal question jurisdiction under 28
U.S.C. § 1331. By order dated August 31, 2022, the Court
granted Plaintiff's request to proceed *in forma pauperis* (IFP),
that is, without payment of the filing fees. For the reasons set
forth in this order, the Court dismisses the action for lack of
subject matter jurisdiction.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion
of the complaint, that is frivolous or malicious, fails to state
a claim on which relief may be granted, or seeks monetary
relief from a defendant who is immune from such relief. 28
U.S.C. § 1915(e)(2)(B); *see* Livingston v. Adirondack
Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). The Court
must also dismiss a complaint when the Court lacks subject
matter jurisdiction of the claims raised. *See* Fed. R. Civ. P.
12(h)(3).

While the law mandates dismissal on any of these grounds,
the Court is obliged to construe *pro se* pleadings liberally,
Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and
interpret them to raise the "strongest [claims] that they

suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d
471, 474 (2d Cir. 2006) (internal quotation marks and
citations omitted) (emphasis in original). But the "special
solicitude" in *pro se* cases, id. at 475 (citation omitted), has
its limits – to state a claim, *pro se* pleadings still must comply
with Rule 8 of the Federal Rules of Civil Procedure, which
requires a complaint to make a short and plain statement
showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state
a claim for relief "that is plausible on its face." Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is
facially plausible if the plaintiff pleads enough factual detail
to allow the Court to draw the inference that the defendant is
liable for the alleged misconduct. In reviewing the complaint,
the Court must accept all well-pleaded factual allegations as
true. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). But
it does not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal
conclusions. Twombly, 550 U.S. at 555. After separating
legal conclusions from well-pleaded factual allegations, the
Court must determine whether those facts make it plausible –
not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Plaintiff Kadar A. Harris, who resides in New York, New
York, brings this complaint against Defendant, who Plaintiff
asserts also resides in New York, New York, *see* ECF No. 2 at
4, alleging that, on August 15, 2021, Defendant assaulted him,
causing him multiple injuries. The following allegations are
taken from Plaintiff's complaint. Plaintiff, who was working
for Uber Technologies, drove his car to West 53rd Street,
between 8th and 9th Avenues, in New York, New York, to
make a food delivery. Before Plaintiff exited his vehicle,
which was double parked, he observed Defendant riding his
bike at a high rate of speed, heading toward Plaintiff's vehicle.
Defendant stopped his bike just short of hitting Plaintiff's
car. Defendant then made an obscene gesture to Plaintiff
and his girlfriend, who was in the car with him. Defendant
also shouted expletives at them. Defendant passed Plaintiff's
vehicle, and Plaintiff then exited his vehicle and proceeded
to make his delivery. Plaintiff and Defendant, who remained
in the area, exchanged angry words. Plaintiff completed
his delivery and returned to his car. As he proceeded to
open his car door, Plaintiff alleges that Defendant came

up behind him and pushed him. After the push, Plaintiff turned around to confront the Defendant, and a physical altercation ensued. Plaintiff denies making any contact with the Defendant during the altercation, but he alleges that Defendant punched him in the mouth and spit in his face. At some point Defendant backed away, and Plaintiff took out his phone and called the police. While Plaintiff was speaking with the 911 operator, Defendant appeared again, rushing up to Plaintiff with an object in his hand, which he swung at Plaintiff, striking and breaking Plaintiff's hand. Plaintiff returned to his car for safety. The police arrived, and Defendant was arrested. Plaintiff seeks monetary damages for "pain, suffering, emotional distress, economic losses, unpaid medical bills, and future medical & rehab cost[s]." (ECF No. 2 at 6.).

## DISCUSSION

### A. Subject Matter Jurisdiction

**\*2** The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal jurisdiction is available only when a "federal question" is presented or when plaintiff and defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000. " '[I]t is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.' " *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative ....").

### 1. Federal Question Jurisdiction is Lacking

Plaintiff fails to state a federal claim. To invoke federal question jurisdiction, a plaintiff's claim must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on

resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). Mere invocation of federal jurisdiction, without any facts demonstrating a federal law claim, does not create federal subject matter jurisdiction. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188-89 (2d Cir. 1996).

Plaintiff brings this complaint as a result of Defendant's assaulting and injuring him. Although Plaintiff invokes the Court's federal question jurisdiction, these facts do not suggest a federal cause of action. The only way that Plaintiff's allegations of assault would rise to the level of a federal claim is if the assault was perpetrated by a state actor. For example, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Here, Plaintiff fails to allege either state action or a violation of federal or constitutional law. Instead, Plaintiff is suing a private individual for assault, and he has not pleaded facts showing that his claim arises under federal law. There is, therefore, no basis for federal question jurisdiction.

### 2. Diversity of Citizenship Jurisdiction is also Lacking

Plaintiff does not allege facts demonstrating that the Court has diversity jurisdiction of this action under 28 U.S.C. § 1332. To establish diversity jurisdiction, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). Plaintiff indicates in the complaint that both he and Defendant reside in New York, precluding complete diversity of citizenship.

### B. Leave to Amend Denied

**\*3** District courts generally grant *a pro se* plaintiff an opportunity to amend a complaint to cure its defects but

leave to amend is not required where it would be futile. *See* Hill v. Curcione, 657 F.3d 116, 123–24 (2d Cir. 2011); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). Because Plaintiff has not pleaded any facts suggesting that there is a basis for this Court to exercise jurisdiction, the defects in Plaintiff's complaint cannot be cured with an amendment. The Court therefore declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a) (1), is dismissed for lack of subject matter jurisdiction. [1] *See* Fed. R. Civ. P. 12(h)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf.* Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is directed to issue judgment in this case.

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 10642676

## Footnotes

1    The Court's dismissal of this action does not preclude Plaintiff from pursuing his claims against Defendant in the appropriate state court.

**End of Document**                                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 3387133
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Alexander PHILLIPS ppa Ralph E. Phillips, Plaintiff,
v.
TOWN OF HEBRON, et al., Defendants.

No. 16-cv-1726 (MPS)
|
Signed 08/07/2017

**Attorneys and Law Firms**

Patricia Anne Cofrancesco, Law Office of Patricia A. Cofrancesco, East Haven, CT, for Plaintiff.

Alexandria L. Voccio, David S. Monastersky, Howd & Ludorf, LLC, Hartford, CT, for Defendants.

**Ruling on Motion to Remand**

Michael P. Shea, U.S.D.J.

**I. Introduction**

**\*1** Defendants Town of Hebron, Hebron Board of Education, and various teachers and school officials at a Hebron elementary school (collectively, the "Defendants") removed this case from Connecticut Superior Court on the basis of federal question jurisdiction. Although the complaint pleads claims created by state statutes and common law, Defendants contend that federal question jurisdiction exists because those claims assert the violation of a duty created by federal law, i.e., the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et. seq. (ECF No. 1 at 2.) Plaintiff has filed a motion to remand the case to state court, arguing that the complaint does not raise a "substantial federal question" under relevant Supreme Court case law. (ECF No. 12 at 1.) For the reasons set forth below, I agree with Plaintiff and grant the motion to remand.

**II. Background**

**A. Facts Alleged in the Complaint**

Plaintiff, Alexander Phillips, is a seven-year-old child diagnosed with Down Syndrome and "without functional speech." (ECF No. 1-2 at 2.)[1] He attends Gilead Hill Elementary School ("Gilead"), a public school in Hebron,

Connecticut, where he has an individualized education program ("IEP").[2] Alexander's IEP provides that he is to "spend 26.33 hours per week with children/students who do not have disabilities." (Id. at 5.)

On February 25, 2015, Alexander's father, Ralph Phillips, visited Alexander's kindergarten classroom. (Id. at 3.) During his visit, Mr. Phillips "noticed that Alexander and Mrs. Prior, the paraprofessional assigned to Alexander, went into the coatroom." (Id.) Mr. Phillips was invited to observe. (Id.) Mr. Phillips "saw that there was a desk and chair for Alexander" in the coatroom. (Id.) Mr. Phillips was not aware of this arrangement and had never consented to it. (Id. at 5.) Following his visit to Alexander's classroom, on March 2, 2015, Mr. Phillips met with Mr. Joshua Martin, the Director of Special Education for Hebron Public Schools, to discuss how much time Alexander spent in the coatroom each day. (Id. at 3-4.) Mr. Martin indicated that he did not know why "Alexander would have to go to the coatroom unless there was some discrete testing going on" and assured Mr. Phillips he would look into it. (Id. at 4.)

In the interim, on March 25, 2015, Mr. Phillips attended a planning and placement team meeting (a "PPT") with Alexander's classroom teacher, Ms. Poulin, and his special education teacher, Mrs. Ellsworth. (Id. at 4.) At the PPT, Mr. Phillips inquired as to how much time Alex spent in the coatroom. (Id.) Mrs. Ellsworth responded that Alex spent "on average, about 40 minutes a day" in the coatroom doing projects or classwork. (Id.) Ms. Poulin added that Alex "work[ed] in the coatroom because his projects require[d] a lot of space and there [was not] enough [space] in the classroom" and further, that Alex was assigned to the coatroom because he could be "distracting to other children" and other children could "be distracting to him." (Id. at 5.) Five days after the PPT, on March 30, 2015, Gilead notified Mr. Phillips that Alexander's workspace had been moved from the coatroom into the classroom. (Id.)

**\*2** More than a year later, on June 22, 2016, Mr. Philips learned that Ms. Ellen Kirkpatrick, Gilead's school nurse, on May 13, 2016, had—without Mr. Phillips' consent—taken Alexander "into a room at school, removed his clothes, photographed him with her personal cellphone, and sent the photographs via text message to a third party." (Id. at 23.) Two days earlier, on May 11, 2016, Ms. Kirkpatrick had requested and received permission from Ms. Patricia Buell, Hebron's Director of Educational Services, to take that action. (Id. at 24-25.) After learning of the May 13 incident, Mr.

Phillips convened a meeting with Mr. Timothy Van Tasel, the Superintendent of Hebron Public Schools, to discuss the incident. (*Id.* at 26-27.) At that meeting, Superintendent Tasel informed Mr. Phillips that he had directed Hebron staff to maintain communication with Mr. Phillips and obtain his consent before taking any actions concerning Alexander. (*Id.* at 27.)

### B. Plaintiff's Causes of Action

In his complaint, Plaintiff asserts seventeen state law causes of action arising from his placement in the coatroom and the photographs taken by Ms. Kirkpatrick. Plaintiff claims (i) discrimination in violation of Conn. Gen. Stat. §§ 46a-58(a) and 46a-75(a) and (b) (counts one through five); (ii) negligence per se (counts six through ten); (iii) assault (counts eleven and twelve); and (iv) negligence (counts thirteen through seventeen).

More specifically, the discrimination claims (counts one through five) allege the defendants—Hebron Board of Education, Martin, Wilson, Ellsworth, and Poulin—violated Conn. Gen. Stat. §§ 46a-58(a) and 46a-75(a) and (b) when they deprived Alexander of "his rights, privileges or immunities secured or protected by the Constitution or laws of [Connecticut] or of the United States on account of [his] disabilities." (ECF No. 1-2 at 6-9, 11, 13.) In those claims, Plaintiff also alleges that those defendants violated Alexander's "right to be educated in the least restrictive environment as provided by [the IDEA.]." (*Id.* at 7.) Further, in the negligence per se counts (six through ten), Plaintiff claims that the same defendants "had a duty under [the IDEA] to educate [Alexander] in the least restrictive environment," and they breached that duty because they "knew or should have known that [Alexander] was not spending time with nondisabled children to the maximum extent possible" resulting in "imminent harm and/or detriment to his academic and social development." (*Id.* at 15-22.) The next two counts —counts eleven and twelve—claim assault by defendants Kirkpatrick and Buell. (*Id.* at 23-26.) The final counts— thirteen through seventeen—brought against defendants Van Tasel, Brody, Martin, Wilson, and Buell—assert multiple theories of negligence, including that Martin and Wilson "failed to take reasonable steps to supervise and/or control" school staff "to ensure [Alexander's] rights under state and federal law were protected." (*Id.* at 32, 34.)

### III. Relevant Law

### A. Removal

Defendants—the removing parties—bear the burden of demonstrating that removal was proper. *United Food & Commercial Workers Union, Local 919 v. Centermark Properties*, 30 F.3d 298, 301 (2d Cir. 1994)(observing where "jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper")(internal quotation marks and citations omitted). Furthermore, the "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Electrical Contractors, Inc. v. State of Conn. Dept. of Tranp.*, 139 F. Supp. 2d 265, 267 (D. Conn. 2001)(internal quotation marks and citations omitted). Defendants assert that removal was proper because there is federal question jurisdiction. (ECF No. 1 at 2.) Defendants assert no other basis for jurisdiction. Federal question jurisdiction exists if one of Plaintiff's claims "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### B. The Individuals with Disabilities Education Act

**\*3** The purpose of the IDEA is "to provide free appropriate public education" to "all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. School*, 137 S. Ct. 743, 748 (2017)(internal quotation marks and citations omitted). A free appropriate public education "comprises special education and related services—both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction." *Id.* at 748-49 (internal quotation marks and citations omitted). To that end, the IDEA provides for IEPs, which "serve[ ] as the primary vehicle for providing each child with the promised [free appropriate public education]." *Id.* at 749 (internal quotation marks and citations omitted). "Crafted by a child's IEP team—a group of school officials, teachers, and parents—the IEP spells out a personalized plan to meet all of the child's educational needs." *Id.* (internal quotation marks and citations omitted). The IEP, for example, "documents the child's current levels of academic achievement, specifies measurable annual goals for how [ ]he can make progress in the general education curriculum and lists the special education and related serves to be provided so that [ ]he can advance appropriately toward those goals." *Id.* Furthermore, a provision of the IDEA cited in the Plaintiff's complaint and entitled "Least Restrictive Environment" mandates that "[t]o the maximum

**Phillips v. Town of Hebron, Not Reported in Fed. Supp. (2017)**

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 25 of 55

extent appropriate, children with disabilities ... are [to be] educated with children who are not disabled and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A). [3]

## IV. Discussion

To show removal was proper, Defendants must show that Plaintiff's claims "arise[ ] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim arises under those laws if either (i) federal law creates one of the causes of action asserted in the complaint, or (ii) Plaintiff's claims fall in a "small category" of cases where "a claim that finds its origins in state rather than federal law" raises a "substantial" federal question. Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013). More specifically, in the latter category, "federal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id. at 1065. All four requirements must be met for a case to fall into this "special and small category." Id. at 1064-65. The complaint in this case alleges no causes of action created by federal law. [4] Therefore, whether federal question jurisdiction exists in this case depends on whether Plaintiff's case falls within the "special and small category of cases," id. at 1064, in which the Court must resolve "a substantial question of federal law in dispute between the parties." Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13 (1983)(internal quotation marks and citations omitted).

Citing the complaint's references to Alexander's IEP and the IDEA, Defendants contend that Plaintiff's claims, specifically his claims of discrimination in violation of state statutes and claims for negligence and negligence per se, present substantial questions of federal law because the claims are "predicated upon the alleged failure to educate the minor plaintiff in the least restrictive environment, a requirement of the IDEA." (ECF No. 15 at 4.) For the reasons explained below, however, even if the complaint's reliance on the IDEA raises a disputed federal question, it does not raise a substantial one or one "capable of resolution in federal

court without disrupting the federal-state balance approved by Congress." Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 314 (2005).

## A. Negligence Claims (Counts 13-17)

Plaintiff's negligence claims do not "necessarily" raise a federal issue because Plaintiff may prevail on those claims without showing a violation of the IDEA. Counts thirteen, fourteen, and seventeen do not even reference federal law, and so no federal issue is raised. (ECF No. 1-2 at 29-32, 35-38.) Counts fifteen and sixteen do reference federal law, but only as one of multiple specifications of negligence. (Id. at 33-34)(alleging Defendants Martin and Wilson "failed to take reasonable steps to supervise and/or control the aforementioned staff at Gilead Hill Elementary School to ensure [Alexander's] rights under state and federal law were protected.") Such references do not necessarily raise a federal question because under Connecticut law, a plaintiff need only prove negligence in one of the ways alleged in his complaint for a defendant to be liable. Wenger v. Town of Easton, No. 13-cv-695, 2013 WL 5445320, at * 3 (D. Conn. Sept. 30, 2013)("Under Connecticut law, proof that the defendant was negligent in just one of the ways claimed is sufficient to prove negligence.")(internal quotation marks and citations omitted); see also In re The Reserve Fund Securities and Derivative Litig., 2009 WL 3634085, at *4 (S.D.N.Y. Nov. 3, 2009)("Courts in this Circuit have made clear that the exercise of federal jurisdiction is inappropriate where no cause of action necessarily stands or falls based on a particular interpretation or application of federal law.") (internal quotation marks, alterations and citations omitted). Because these claims do not require the resolution of a federal question, they do not provide a basis for federal jurisdiction. Broder v. Cablevision Sys. Corp., 418 F.3d 187, 194 (2d Cir. 2005)(observing "[w]here a federal issue is present as only one of multiple theories that could support a particular claim, however, this is insufficient to create federal jurisdiction" and "[o]ne of the key characteristics of a mere theory as opposed to a district claim, is that a plaintiff may obtain the relief he seeks without prevailing on it")(internal quotation marks and citations omitted).

## B. Negligence Per Se Claims (Counts 6-10)

**\*4** While Plaintiff's negligence per se claims necessarily raise a federal question because they resort to the IDEA to define the duty at issue, the question they raise is not "substantial." For a question to be substantial, "it is not

enough that the federal issue be important to the parties in a particular suit," *Gunn*, 133 S. Ct. at 1066 (internal quotation marks and citations omitted), or that there is a "mere need to apply federal law in a state-law claim." *Grable*, 545 U.S. at 313. A "substantial" federal question is raised when its "resolution [is] both dispositive of the case and would be controlling in numerous other cases." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)(internal quotation marks and citations omitted). Such a question "present[s] a nearly pure issue of law" that "would govern numerous [other similar] cases" as opposed to "fact-bound and situation specific" issues. *Id.* at 700-01 (internal quotation marks and citations omitted); *compare Meyer v. Health Management Associates, Inc.*, 841 F. Supp. 2d 1262, 1268-69 (S.D. Fla. 2012)(holding there was no substantial question of federal law presented in a wrongful termination suit because it involved context-specific factual determination of whether the employer violated federal Medicare provisions) *with Smith v. Kansas City Title and Trust Co.*, 255 U.S. 180 (1921)(there was federal question jurisdiction over suit by shareholder asserting Missouri-law claim that defendant corporation could not buy federal government bonds because their issue was unconstitutional). Thus, "[t]he mere reference to federal statutes, even where a plaintiff argues that they set forth a standard of care, is an insufficient basis for the court to exercise federal question jurisdiction." *Elmaliach v. Bank of China, Ltd.*, No. 09-cv-2130, 2010 WL 1172829, at * 8 (S.D.N.Y. Mar. 26, 2010)(internal quotation marks and citations omitted)(citing cases); *Elmira Teachers' Ass'n v. Elmira City School Dist.*, No. 06-cv-6513, 2006 WL 240552, at * 6 (W.D. NY. Jan. 27, 2006)(granting motion to remand in a negligence case where "[26] U.S.C. § 403(b) ... merely provide[d] the standard of care"); *In re the Reserve Fund Securities and Derivative Litigation*, 2009 WL 3634085, at *5 ("That federal law might serve to provide a standard of care for a state law claim, however, is an insufficient foundation for the exercise of federal jurisdiction.")(internal quotation marks and citations omitted)(citing cases); *Taylor v. Lewis*, 772 F. Supp. 2d 1040, 1044 (E.D. Mo. 2011)(holding that there was no substantial federal question present though it was "possible that the Missouri courts may look to the [housing quality standards] as defined in 24 C.F.R. § 401 when determining what standard of care ... Defendant owed Plaintiff"). Apart from not being sufficient to make the question "substantial," the reliance on federal law standards in negligence per se claims does not make the federal question "capable of resolution in federal

court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. This is evident from the Supreme Court's discussion of negligence per se claims in *Grable*:

> One only needed to consider the treatment of federal violations generally in garden variety state tort law. The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings. A general rule of exercising federal jurisdiction over state law claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts.

545 U.S. at 318-19. This, too, is a case in which treating the presence of a federal question in the duty element of a state law claim would open the federal courts to a broad flow of state-law tort claims. Not surprisingly, then, other courts have remanded suits—such as this one—where a plaintiff alleges negligence based on duties owed to him under the IDEA. *See Chambers v. Cincinnati Sch. Bd.*, No. 13-CV-618, 2014 WL 1909996, at *3 (S.D. Ohio May 13, 2014)("Courts considering whether the creation under IDEA of a duty of care is sufficient to confer federal question jurisdiction in the absence of a claim brought under another federal statute, such as 42 U.S.C. § 1983, conclude that it does not.") (internal quotation marks, citations, and alterations omitted) (citing cases); *Reuther v. Shiloh Sc. Dist. No. 85*, No. 07-cv-689, 2008 WL 191195, at *3-4 (S.D. Ill. Jan. 18, 2008)(finding no federal question jurisdiction where plaintiff "advance[d] [the IDEA] solely as the creator of duties owed [to the student]" and "the theories upon which the[ ] claims [were] based [were] solely state tort law")(internal quotation marks and citations omitted).[5]

**\*5** In this case, each of the negligence per se claims merely sets forth the Defendants' duty under the IDEA —specifically the duty to educate Alexander in the least restrictive environment as required by his IEP (ECF No.

Phillips v. Town of Hebron, Not Reported in Fed. Supp. (2017)

Case 3:23-cv-01108-DNH-ML    Document 5    Filed 09/29/23    Page 27 of 55

1-2 at 15-16, 18, 20-21)–, which is an insufficient basis for the Court to exercise jurisdiction. Further, that issue is factual in nature and not a "nearly pure issue of law."

*Empire Healthchoice Assur., Inc.,* 547 U.S. at 700. As the Second Circuit has explained, the evaluation of a defendant's duty under the IDEA to place a child in the least restrictive environment as provided in his IEP is "an individualized and fact specific inquiry into the nature of the student's condition and the school's particular efforts to accommodate it, ever mindful of the IDEA's purpose of educating children with disabilities, to the maximum extent appropriate, together with their non-disabled peers." *See P. ex.* *Rel. Mr. and Mrs. P. v. Newington Bd. of Ed.,* 546 F.3d 111, 120 (2d Cir. 2008)(internal quotation marks and citations omitted). That analysis requires fact-specific inquiries into (i) "whether education in the regular classroom, with the use of supplemental aids and services can be achieved satisfactorily for a given child" and (ii) "if not, then, whether the school has mainstreamed the child to the maximum extent appropriate." *Id.* (internal quotation marks and citations omitted). With respect to the first inquiry, context-specific factors must also be considered, including: (i) "whether the school district has made reasonable efforts to accommodate the child in a regular classroom"; (ii) "the educational benefits available to the child in a regular class, with appropriate supplementary aids and services, as compared to the benefits provided in a special education class"; and (iii) "the possible negative effects of the inclusion of the child on the education of the other students in the class." *Id.* (internal quotation marks and citations omitted). Those issues are far from the "nearly pure issue[s] of law" sufficient to warrant federal question jurisdiction.

*Empire Healthchoice,* 547 U.S. at 700. Rather, they are the "fact-bound and situation-specific" questions that preclude finding a substantial question of federal law. *See id.* at 701. In this case, for example, they would require a court to make a careful assessment of the need for and effect of placing Alexander in the coatroom for supplemental instruction, an assessment that would depend in part on the dimensions and layout of the coatroom, the uses to which it was put, and its proximity to the main classroom. Plainly, the resolution of such fact-specific questions would not govern other similar cases asserting a breach of duty owed under the IDEA to educate disabled children in the least restrictive environment. Because I find that no substantial question of federal law is present, and because the extension of federal question jurisdiction to this case raises the concerns articulated in *Grable,* I find that there is no basis for federal question jurisdiction over Plaintiff's negligence per se claims.

## C. Discrimination Claims (Counts 1-5)

Plaintiff's discrimination claims do not "necessarily" raise a federal issue. The two state statutes invoked in these counts both prohibit discrimination on the basis of disability, and the complaint alleges that the defendants—Hebron Board of Education, Martin, Wilson, Ellsworth, and Poulin—have violated that prohibition. *See* Conn. Gen. Stat. § 46a-58(a)(providing in part "[i]t shall be a discriminatory practice in violation of this section for any person to ... cause to be subjected, any other person the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of this State or the United States, on account of ... mental disability or physical disability");

Conn. Gen. Stat. § 46a-75(a)(providing in part that "[a]ll educational, counseling, and vocational guidance programs and all apprenticeship and on-the-job training programs or stage agencies, or in which state agencies participate, shall be open to all qualified person without regard to ... mental retardation, mental disability, learning disability, or physical disability ..."); (ECF No. 1-2 at 6-8, 11, 13)("The defendant Hebron Board of Education ... segregated minor plaintiff from other children/students without disabilities on the basis of minor plaintiff's disabilities ... [and thereby] violated Connecticut General Statutes §§ 46a-58(a) and 46a-75(a) and (b) when it deprived the minor plaintiff of his rights, privileges, or immunities secured or protected by the Constitution or laws of this state or of the United States on account of the disabilities of the minor plaintiff."). These claims can be resolved by a determination of whether the defendants have done so and thus do not require resolution of a federal question. Thus, like the negligence claims in counts thirteen through seventeen, the discrimination claims do not necessarily raise a question of federal law. *See* Broder, 418 F.3d at 194. That conclusion is unaltered by the reference in these counts to IDEA's definition of "Least Restrictive Environment" or the assertion that the defendants violated the "minor plaintiff's right to be educated in the least restrictive environment ..." (ECF No. 1-2 at 6-8, 11, 13.) It is not necessary to resolve that assertion because the defendants could have violated the state statutory prohibitions against disability-based discrimination without violating that IDEA provision. Finally, contrary to Defendants' assertion, even if these state statutes do not create a private cause of action, that would not make these claims hinge on a federal question. To the contrary, whether these state statutes create a private cause

Phillips v. Town of Hebron, Not Reported in Fed. Supp. (2017)

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 28 of 55

of action is a question of state law, and a determination that they do not would raise no issue of federal law.

### D. Assault Claims (Counts 11-12)

**\*6** Plaintiff's claims for assault are plainly state law claims that do not present any federal question. *See In re the Reserve Fund Securities and Derivative Litig.*, 2009 WL 3634085, at *4.

### V. Conclusion

For the reasons set forth above, I hereby **GRANT** the motion to remand. [6] The Clerk is directed to remand this case to Superior Court and close the case.

IT IS SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2017 WL 3387133

---

### Footnotes

1    Due to duplicative numbering of the paragraphs in the complaint, I cite the docket page number of the complaint.

2    An IEP is "the result of collaborations between parents, educators, and representatives of the school district, [and] sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *T.Y. v. New York City Dept. of Educ.*, 584 F.3d 412, 415 (2d Cir. 2009).

3    Plaintiff's complaint refers to this provision as *Section 1412(C)(5)*, but apparently means *Section 1412(a)(5)*.

4    Though the IDEA provides a private right of action for disabled children and their parents to file suit in federal court after exhausting the IDEA's administrative process, 20 U.S.C. § 1415(i)(2), Plaintiff has not brought a claim under this provision.

5    Such cases are well suited for adjudication in state courts because the remedies (compensatory and punitive damages) often sought in those cases, as in this one, are not even available under the IDEA. *See Reuther*, 2008 WL 191195 at *4 (finding remand appropriate, in part, because plaintiff sought monetary damages not a "change to his IEP"); *see also Polera v. Board of Educ. of New Burgh Enlarged City School Dist.*, 288 F.3d 478, 485 (2d Cir. 2002)("We agree with the prevailing opinion of the other Circuits and districts courts in our Circuit" that the "purpose of the IDEA is to provide educational services, not compensation for personal injury."). In this case, Plaintiff seeks only monetary relief for the injuries allegedly caused by the Defendants. (ECF No. 1-2 at 38.)

6    Because I lack jurisdiction, I need not consider the issue whether Plaintiff has exhausted his remedies under the IDEA.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 29 of 55

Wilson v. Neighborhood Restore Development, Not Reported in Fed. Supp. (2018)

2018 WL 2390143
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, E.D. New York.

Wilbert WILSON, Roland Woods,
Ta'kyashilah Sabree, and E.J., Plaintiffs,
v.
NEIGHBORHOOD RESTORE DEVELOPMENT
and Northeast Brooklyn, Defendants.

18-CV-1172 (MKB)
|
Signed 05/18/2018

**Attorneys and Law Firms**

Wilbert Wilson, Brooklyn, NY, pro se.

Roland Woods, Brooklyn, NY, pro se.

Ta'kyashilah Sabree, Brooklyn, NY, pro se.

E.J., Brooklyn, NY, pro se.

Max Rayetsky, Goldstein Hall, PLLC, New York, NY, for Defendants.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge

 **\*1** Plaintiffs Wilbert Wilson, Roland Woods, Ta'kyashilah Sabree and E.J., proceeding *pro se*,[1] commenced the above-captioned action on February 22, 2018 against Defendants Neighborhood Restore Development and Northeast Brooklyn, alleging breach of contract, breach of the warranty of habitability, negligence, personal injury and fraud. (Compl. 2, Docket Entry No. 1.) For the reasons set forth below, the Court dismisses the Complaint.

**I. Background**
The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order. Plaintiffs allege Defendants unlawfully obtained possession of real property located at 580 Lafayette Avenue in Brooklyn, New York, which appears to be Plaintiffs' residence, through a fraudulent tax lien foreclosure. (*Id.* at

1, 3.) Plaintiffs assert that Defendant Neighborhood Restore, a nonprofit organization "organized by the Department of Finance to be a [l]ien [s]ale [h]older," "was specifically unaware that the plaintiff[ ] Wilbert Wilson had obtained a [r]everse [m]ortgage and was approved [and] ready to pay off the taxes owed to the City of New York" and that Plaintiffs "had requested and received a Temporary Exemption Tax Lien due to property renovation."[2] (*Id.* at 3). In addition, Plaintiffs allege that "[w]hen the City of New York [t]ransferred the [l]ien [s]ale," to Neighborhood Restore, it did not "transfer[ ] the [d]eed," but Neighborhood Restore nonetheless "[f]raudulently deleted" Plaintiff Wilbert Wilson from the deed, and added Neighborhood Restore. (*Id.*) Plaintiffs further allege that Neighborhood Restore's actions "[c]aused the [d]eath of three (3) members of the family," but do not explain how the deaths occurred or provide any other relevant information. (*Id.*) Plaintiffs seek money damages in the amount of $50 million. (*Id.*)

**II. Discussion**

**a. Standard of review**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) ); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 30 of 55

Wilson v. Neighborhood Restore Development, Not Reported in Fed. Supp. (2018)

**\*2** Nevertheless, if the court "determines at any time that it lacks subject-matter jurisdiction, the [c]ourt must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also* Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L., 790 F.3d 411, 416–17 (2d Cir. 2015) (holding that a district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ) ).

### b. Plaintiffs may not bring suit on behalf of E.J.

It is well-settled that a lay person cannot represent another individual—not even his or her own child. Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."); *see* Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a lay person may not represent a corporation or a partnership or appear on behalf of his or her own child."). When it is apparent to the court that a *pro se* plaintiff is suing on behalf of a minor, the Court has a duty to protect the child by enforcing, *sua sponte*, this prohibition against unauthorized representation. Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 125 (2d Cir. 1998). In this case, E.J., a named Plaintiff in this action, appears to be a minor. (*See* Compl. 5.) Because the other Plaintiffs are not attorneys, they cannot bring suit on behalf of E.J. Therefore, the Court dismisses without prejudice all claims filed on behalf of E.J.

### c. The Court lacks subject matter jurisdiction over Plaintiffs' claims

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700–01 (2d Cir. 2000). The statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Federal question jurisdiction provides federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the

United States." Bounds v. Pine Belt Mental Health Care Res., 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1331). A plaintiff properly invokes section 1331 jurisdiction when he pleads a colorable claim "arising under" the Constitution or laws of the United States. Under the diversity jurisdiction statute, federal courts have subject matter jurisdiction over state law claims where the plaintiff and defendant are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also* Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 48 (2d Cir. 2012).

For a federal court to exercise subject matter jurisdiction based on diversity, there must be complete diversity of citizenship between all plaintiffs and all defendants. Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' i.e. all plaintiffs must be citizens of states diverse from those of all defendants."); Lovejoy v. Watson, 475 Fed.Appx. 792, 792 (2d Cir. 2012) ("The complaint alleged that [the plaintiff] and the defendant resided in New York, thereby precluding diversity jurisdiction."). For purposes of diversity of citizenship, a corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1); *see* Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010) (holding that " 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also* Bayerische Landesbank, 692 F.3d at 48.

**\*3** Construing Plaintiffs' allegations to "raise the strongest arguments they suggest," McLoed v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (quoting Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ), the Complaint does not suggest any basis for subject matter jurisdiction. There is no federal question jurisdiction because Plaintiffs' claims do not arise under the Constitution or any federal laws. *See* 28 U.S.C. § 1331. Instead, Plaintiffs allege claims for breach of contract, breach of the warranty of habitability, negligence, personal injury and fraud, (Compl. 2), all of which are state law claims, *see* JP Morgan Chase Bank, N.A. v. Hunter Grp., Inc., No. 10-CV-00917, 2010 WL 5313547, at \*3 (E.D.N.Y. Dec. 20, 2010) (contract claims governed by state law); Silver v. Campbell, No. 16-

Wilson v. Neighborhood Restore Development, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01108-DNH-ML    Document 5    Filed 09/29/23    Page 31 of 55

CV-0911, 2017 WL 4011259, at *6 (N.D.N.Y. Sept. 11, 2017) (dismissing state law warranty of habitability claim for lack of diversity jurisdiction); *White v. Ercole*, No. 06-CV-1136, 2009 WL 602890, at *5 (S.D.N.Y. Mar. 3, 2009) (negligence claim a matter of state law); *West v. Sanchez*, No. 17-CV-2482, 2017 WL 1628887, at *2 (E.D.N.Y. May 1, 2017) (no federal question jurisdiction on what "amount[s] to a state-law personal injury claim" (citations omitted) );

⚐ *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 182 (2d Cir. 2015) (elements of common-law fraud governed by state law).

In addition, Plaintiffs do not invoke the Court's diversity jurisdiction, and, in any event, the addresses provided by Plaintiffs suggest a lack of complete diversity between the parties. (Compl. 2 (listing New York addresses for Defendants Neighborhood Restore Development, Northeast Brooklyn and Plaintiff Wilbert Wilson).) Therefore, there is no diversity of citizenship that would confer diversity jurisdiction. *See Herrick Co. v. SCS Communications, Inc.*, 251 F.3d 315, 325 (2d Cir. 2001) (holding that federal diversity statute mandates complete diversity).

Because the Complaint does not give rise to federal question or diversity jurisdiction, the Court dismisses the Complaint for lack of subject matter jurisdiction. *Fed. R. Civ. P. 12(h)(3)*; ⚐ *Ruhrgas*, 526 U.S. at 583. However, in light of Plaintiffs' *pro se* status, the Court grants Plaintiffs leave to file an amended complaint within thirty (30) days of this Memorandum and Order, in order to plead facts supporting subject matter jurisdiction. In addition, to the extent Plaintiffs seek to bring claims on behalf of E.J., Plaintiffs must retain counsel to assert such claims.

Plaintiffs are advised that the amended complaint will completely replace the original complaint, must be captioned, "Amended Complaint," and must bear the same docket number as this Order.

In order to invoke the Court's diversity jurisdiction, Plaintiffs must establish complete diversity of citizenship (meaning that no Defendant can be a citizen of the same State as each Plaintiff) and must set forth the amount in controversy in the amended complaint. *See, e.g., Pearson v. Reid-Robinson*, 632 Fed.Appx. 19, 19 (2d Cir. 2016) (holding that courts should

allow "plaintiffs to amend complaints to drop dispensable nondiverse defendants whose presence would defeat diversity of citizenship" (internal quotation marks omitted) (citing

⚐ *Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987) ) ).

If Plaintiffs intend to invoke the Court's federal question jurisdiction, Plaintiffs must set forth sufficient factual content to allow the Court "to draw the reasonable inference" that each defendant named in the amended complaint is liable for the misconduct or harm caused to each Plaintiff named in the amended complaint, ⚐ *Iqbal*, 556 U.S. at 678; *Fed. R. Civ. P. 8*, and that such conduct is in violation of a federal constitutional or statutory right.

**\*4** All further proceedings shall be stayed for thirty (30) days. If Plaintiffs fail to file an amended complaint which establishes the Court's jurisdiction over this matter within the time allowed, the Court will dismiss the Complaint without prejudice for lack of subject matter jurisdiction. *Fed. R. Civ. P. 12(h)(3)*.

### III. Conclusion

For the foregoing reasons, the Court dismisses without prejudice all claims brought on behalf of E.J., ⚐ *Cheung*, 906 F.2d at 61, and dismisses the entire Complaint without prejudice for lack of subject matter jurisdiction, *see Fed. R. Civ. P. 12(h)(3)*. The Court grants Plaintiffs leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order. No summons shall issue at this time, and all further proceedings shall be stayed for thirty (30) days.

Although Plaintiffs paid the filing fee, the Court certifies pursuant to ⚐ 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.

⚐ *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2390143

Wilson v. Neighborhood Restore Development, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 32 of 55

**Footnotes**

1       Although the Complaint contains a sentence suggesting that Plaintiffs are represented by counsel, (*see* Compl. 3) ("The Plaintiff and his attorney are seeking to consider negotiation with the Defendants...."), no attorney has appeared in this action on Plaintiffs' behalf.

2       The Complaint does not provide information regarding the second named Defendant, Northeast Brooklyn.

**End of Document**                                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 302648
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Kenric LEVER, Plaintiff,

v.

Christina LYONS and Lescele Bogle, Defendants.

16-CV-5130 (MKB) (SJB)
|
Signed 01/27/2021
|
Filed 01/28/2021

**Attorneys and Law Firms**

Kenric Lever, Brooklyn, NY, pro se.

Christina Lyons, Orange, NJ, pro se.

Lescele Bogle, Eastampton, NJ, pro se.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge:

**\*1** Plaintiff Kenric Lever, proceeding *pro se*, commenced the above-captioned action on September 15, 2016, against Defendants Christina Lyons and Lescele Bogle, also proceeding *pro se*. (Compl., Docket Entry No. 1.) In a prior Memorandum and Order, the Court found that complete diversity did not exist between Plaintiff and Lyons and dismissed the action for lack of subject matter jurisdiction but granted Plaintiff leave to amend.[1] Plaintiff filed an Amended Complaint on June 21, 2018, asserting claims of false imprisonment, intentional infliction of emotional distress, and defamation. (Am. Compl., Docket Entry No. 51.) The Court referred the matter to Magistrate Judge Sanket J. Bulsara for a report and recommendation regarding the Court's subject matter jurisdiction. (*See* Order dated Oct. 23, 2018.)

After evidentiary hearings on March 21 and April 3, 2019,[2] Judge Bulsara filed a report and recommendation on September 12, 2019 (the "R&R"), recommending that the Court dismiss the Amended Complaint for lack of subject matter jurisdiction because both Plaintiff and Lyons were domiciled in New York. (R&R, Docket Entry No. 73.) On

October 29, 2019, Plaintiff filed objections to the R&R. (Pl.'s Obj. to R&R ("Pl.'s Obj."), Docket Entry No. 75.)

For the reasons explained below, the Court adopts the R&R and dismisses the Amended Complaint without prejudice for lack of subject matter jurisdiction.

**I. Background**

**a. Procedural background**

After Plaintiff filed his Complaint on September 15, 2016, Defendants moved to dismiss it on August 9, 2017, for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively, and for sanctions against Plaintiff. (*See* Letter Mot. to Dismiss by Lescele Bogle, Docket Entry No. 26; Letter Mot. to Dismiss by Christina Lyons, Docket Entry No. 27.) On August 25, 2017, the Court referred the motions to Magistrate Judge Cheryl L. Pollak for a report and recommendation. (*See* Order dated Aug. 25, 2017.)

By report and recommendation dated January 2, 2018, Judge Bulsara[3] recommended that the Court dismiss the Complaint without prejudice for lack of subject matter jurisdiction and deny Defendants' requests for sanctions.[4] (R&R dated Jan. 2, 2018 ("2018 R&R"), at 21, Docket Entry No. 37.) On February 26, 2018, the Court adopted the 2018 R&R in its entirety over Plaintiff's objections. (Mem. and Order dated Feb. 26, 2018, Docket Entry No. 45.)

**\*2** On June 21, 2018, Plaintiff filed an Amended Complaint, (Am. Compl.),[5] and Defendants filed Answers, (Lyons Answer, Docket Entry No. 53; Bogle Answer, Docket Entry No. 54.) After evidentiary hearings on the question of subject matter jurisdiction on March 21 and April 3, 2019, (*see* Lever Tr.; Lyons Tr.), by report and recommendation dated September 12, 2019, Judge Bulsara determined that both Plaintiff and Lyons were domiciled in New York when the Complaint was filed and therefore the parties are not completely diverse. (R&R 16.) Judge Bulsara therefore recommended that the Court dismiss the Amended Complaint for lack of subject matter jurisdiction. (*Id.* at 17.) Plaintiff timely filed objections to the R&R. (Pl.'s Obj.)

**b. Factual background**

The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of deciding

Defendants' motions and assumes the parties' familiarity with the facts set forth in the prior opinions. *See Lever v. Lyons*, No. 16-CV-5130, 2018 WL 1521857, at *1 (E.D.N.Y. Jan. 2, 2018), *report and recommendation adopted*, 2018 WL 1089328 (Feb. 26, 2018). The Court provides only a summary of the relevant facts.

#### i. September 2015 police report and court appearances

Plaintiff alleges that on September 8, 2015, Lyons made a false report to Newark, New Jersey, police officers "that [Plaintiff] had threatened to harm her and had posted a story on social media [about] her." [6] (Am. Compl. 4.) The report caused an order of protection to be entered against Plaintiff and led to him standing trial for making terroristic threats on September 14, 2015, in Essex County, New Jersey Superior Court (the "Essex County proceeding"). (*Id.*) At that court appearance, Lyons "produce[d] pictures of her beat up with bruises and a black eye and scratches." (*Id.*) She also submitted those photographs in a proceeding in Kings County Family Court. (*Id.*) Plaintiff contends that text messages between Lyons and Bogle revealed that they had colluded to cause those injuries and blame Plaintiff. (*Id.*) At the Essex County proceeding, Lyons caused Plaintiff to be served with a complaint that "intentionally defamed" him by stating that he had been abusing Lyons for years. (*Id.* at 5.) Lyons obtained an order of protection that prevented Plaintiff from obtaining work as a collection agent with New York City Transit in April of 2016 because he was ineligible to obtain a handgun license. (*Id.*)

Plaintiff further alleges that on July 17, 2016, Lyons made a false report to the 78th Precinct in Brooklyn, New York, that Plaintiff was molesting his child and watching child pornography. (*Id.* at 3.) Lyons' report caused Plaintiff emotional distress and caused him to be imprisoned in a locked room for several hours. (*Id.*) On the same day, Lyons "defamed [Plaintiff] by making false statements to the Superior Court of New Jersey, stating [Plaintiff] was under [f]ederal [i]nvestigation," and submitted to the court pictures of child pornography, which Lyons stated were obtained from Plaintiff's computer. (*Id.* at 4.) Lyons "went to the state of New Jersey and made the same complaint" on July 18, 2016, causing Plaintiff to lose custody of his child. (*Id.* at 3.) Plaintiff contends that on August 31, 2016, the Attorney General of Essex County submitted a report to the New Jersey state court concluding that the child pornography submitted by Lyons came from Lyons' friend, not Plaintiff's computer.

(*Id.* at 4.) In addition, Lyons posted "on social media" on an unstated date that Plaintiff had abused her and that she had won a domestic violence case against him. (*Id.* at 5.) Plaintiff alleges that these statements are intentionally false and defamatory. (*Id.*)

#### ii. Plaintiff's allegations concerning Lyons' domicile

**\*3** Plaintiff alleges that Lyons was domiciled in New Jersey when the Complaint was filed and argues that the Court therefore has subject matter jurisdiction. [7] (Am. Compl. 2–3; Deed to 121 Ward Street, Orange, New Jersey 07050 granted to Shawn Landrum, [8] at 8–13, annexed to Am. Compl. as Ex. A, Docket Entry No. 51.) In support, Plaintiff alleges that Lyons has misrepresented her address in prior court appearances because property records reflect that her purported address — 119 Ward Street, Orange, New Jersey, 07050 — does not exist, and is instead "a dual property of 121 [W]ard Street." (Am. Compl. 2.) Plaintiff contends that Lyons testified on August 27, 2014, in Kings County Family Court "that she abandon[ed] New York as her domicile and made the state of New Jersey her new home," and also testified on July 1, 2016, before that same court that she and her child reside in New Jersey. [9] (*Id.*) In addition, Plaintiff contends that Lyons gave her address as 119 Ward Street in each instance. (*Id.*) Plaintiff also asserts that Lyons' attorney stated in a December 6, 2016 hearing in Kings County family court that Lyons lives in New Jersey and requested that proceedings be transferred there. [10] (*Id.*)

In further support of his argument that Lyons is a New Jersey domiciliary, Plaintiff relies on the addresses on Lyons' bank and cable television accounts, tax filings in which Lyons "claim[ed] that she d[id] not maintain any living quarters in New York," and copies of pay stubs with an Orange, New Jersey, address that were certified by the Kings County court. [11] Finally, Plaintiff notes that police officers in Orange, New Jersey, responded to a report at Plaintiff's New Jersey address on August 16, 2016, and found her at home. [12]

#### iii. Hearing testimony

Judge Bulsara heard testimony from Plaintiff and Lyons on the issue of Lyons' domicile. Plaintiff testified that he believes that Lyons is a citizen of New Jersey because of (1) statements

she made in other court proceedings, transcripts of which he has submitted to the Court; (2) her New York driver's license being issued to a United Parcel Service mailbox address where she had never lived; (3) Lyons' inconsistent statements about where she lived; (4) her January 19, 2013 voter registration in New Jersey; [13] and (5) a lawsuit filed against her in New Jersey by her landlord on July 20, 2018. (*Id.* at 10–11, 17–36.) Plaintiff testified that Lyons first lived in Staten Island, then lived with Plaintiff in Brooklyn. He also testified that in May of 2009, while living with Lyons in Brooklyn, Plaintiff obtained an apartment in Jersey City to ease her commute, (Lever Tr. 5:5–6:13), stopped living with Plaintiff around the end of June of 2009, and continued to live in Jersey City until approximately 2011. (*Id.* at 6:20–25.) Lyons then moved to Irvington, New Jersey, and a year later, to Orange, New Jersey. (*Id.* at 7:2–7.) Plaintiff also testified that he knew where Lyons lived because they shared custody of their daughter, who at the time of the hearing lived with Lyons' mother in Staten Island. (*Id.* at 7:10–8:7.) Between 2010 and 2016, Lyons' mother lived in Newark, New Jersey. (*Id.* at 9:3–25.)

 **\*4** Lyons testified that, beginning at "the end of 2012" and ending approximately five years later, she resided at a Staten Island address and "would just go back and forth" between that address and her mother's residence at 119 Ward Street. (Lyons Tr. 4:13–5:1.) "[A]lmost a year" before the hearing, she moved from that Staten Island address to another New York address. [14] (*Id.* at 2:23–4:16.) She has possessed a New York driver's license ever since she "got [her] license ... [fifteen], almost [sixteen] years ago." (*Id.* at 5:4–13.) She never considered herself a resident of New Jersey, but used her mother's New Jersey address as her mailing address until 2018 because Plaintiff was and is "stalking [her]" and she did not feel comfortable disclosing her residence. (*Id.* at 5:14–6:8.) Lyons maintained her mother's apartment in 2016 and 2017 while her mother relocated to Virginia for work. (*Id.* at 7:4–12.) She has never voted in New Jersey, but voted in New York "just this past election" and in 2008, and did not vote anywhere during the intervening years. (*Id.* at 7:15–8:13.) Her car has been registered in her name in New York since 2008 and prior to 2008 was registered in her mother's name. (*Id.* at 8:14–23.)

Judge Bulsara questioned why Lyons had provided a New Jersey address during court proceedings in New Jersey. (*Id.* at 9:6–8.) Lyons testified that custody proceedings had all occurred in New York, and that "[a]s far as any proceedings in New Jersey, that has been [child services]" proceedings

concerning her daughter, who attended school in New Jersey using Lyons' mother's address. (*Id.* at 9:9–10:24.) She further explained that the state was "already familiar with [her] daughter," and as a result, Lyons believed that "when it came to any dealings with the state," New Jersey was the better option. (*Id.* at 9:15–19.) Lyons also testified that in June of 2018, Plaintiff "filed court papers in New Jersey to take custody of [their] daughter," Lyons proved that she was a New York resident, and "the case was then relinquished over to New York." [15] (*Id.* at 11:12–20.)

After the hearings, the parties submitted additional evidence, including 2018 records from family court proceedings, (New Jersey Voter Registration Records ("New Jersey Voter Records") 51–54, annexed to Pl.'s Suppl. Submission on Def. Lyons' Residence as Ex. C, Docket Entry No. 67), which Judge Bulsara considered. Lyons told the Court about a similar lawsuit Plaintiff filed in New York state court. (Letter dated May 13, 2019, at 4, Docket Entry No. 71.) In response to an order from Judge Bulsara, (*see* Order dated June 3, 2019), Plaintiff assured the Court that he wanted to move forward with the federal case. (Letter dated June 24, 2019, Docket Entry No. 72.)

### c. The R&R

Judge Bulsara recommended that the Court dismiss the case for lack of diversity subject matter jurisdiction because Lyons and Plaintiff were domiciled in New York at the time Plaintiff filed the Complaint. (R&R.) As an initial matter, Judge Bulsara noted that Plaintiff had the burden of demonstrating complete diversity, and that "[m]uch of the evidence submitted — particularly from [Plaintiff] — is repetitive and duplicative of the evidence previously submitted," which had been insufficient then to establish diversity jurisdiction. (*Id.* at 2, 5, 10–11.) He found that because Lyons had once been a New York domiciliary, Plaintiff needed to show that Lyons intended to change her citizenship. (*Id.* at 6.)

In evaluating the testimony, Judge Bulsara noted that Lyons' ties to the 119 Ward Street address, which was her mother's home, were "beyond dispute" but "not dispositive of [her] citizenship." (*Id.* at 5–6.) He found the property ownership records for 121 Ward Street that were submitted by Plaintiff to be "of little use," and, if anything, undermined Plaintiff's case because he asserted Lyons' address did not exist, suggesting that there was no record of her owning property in New Jersey and "mak[ing] it less likely that Lyons ever intended

to reside there on a permanent basis." (*Id.* at 6.) As to the tax returns, credit card statements, and other documents all listing Lyons' address as 119 Ward Street, Judge Bulsara found them to be of "little consequence" because the Court had considered them in the prior report and recommendation and concluded that those documents "indicate[d] that the address is a temporary, periodic second residence of ... Lyons, not her primary residence or her domicile." (*Id.* at 7–9.) He further determined that the documents Plaintiff submitted after the evidentiary hearings, including filings from family court proceedings in 2018, were of "little value" because they postdated the filing of the Complaint and were "filled with contradictory evidence, much of which is repetitive of facts previously submitted or is of little to no assistance in establishing the parties' respective domiciles." (*Id.* at 9–10.) He determined that some of the documents Plaintiff provided supported the conclusion that Lyons had ties to New York: she had registered to vote in 2017 with a New York address, has a New York driver's license, and had sought medical care for her daughter in Staten Island in 2016 and 2017. (*Id.* at 10 n.5.)

**\*5** Judge Bulsara determined that discussions of residence in state court proceedings involving Plaintiff and Lyons mainly concerned their daughter's residence, which was in New Jersey. (*Id.* at 7.) Judge Bulsara found that the child's residence was less probative of Lyons' domicile than a child's residence would usually be because the child lived with her grandmother in New Jersey, was born in New York, and sometimes lived with her mother in New York. (*Id.* at 6–7.) In addition, filings from the 2018 proceedings in family court postdated the filing of this Complaint and were repetitive or otherwise unhelpful. (*Id.* at 9.) Judge Bulsara credited Lyons' testimony that she did not intend to move permanently to New Jersey and that her ties to that state "were all based on residing with her mother." (*Id.* at 14–16.) Lyons' mother no longer lived in New Jersey, and Lyons no longer maintains ties to the state, suggesting that she did not intend to permanently change her domicile in 2016. (*Id.* at 15–16.) Given this evidence, Judge Bulsara concluded that Plaintiff had not met his burden of showing that Lyons changed her domicile from New York to New Jersey. (*Id.* at 11, 17.)

Judge Bulsara explained that the Court lacked subject matter jurisdiction over the entire action, because a defect in diversity (unlike a defect in amount in controversy) was an "action-specific" defect that required dismissal of the entire case. (*Id.* at 16–17 (citing *Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 921 F. Supp. 2d 158, 162 (S.D.N.Y. 2013)).) Therefore, the case could not proceed against Bogle, even

though she "does not dispute she is a citizen of New Jersey" and the damages sought against her satisfied the amount-in-controversy requirement. (*Id.* at 16.)

### d. Objections to the R&R

Plaintiff objects to the R&R,[16] arguing that: (1) Judge Bulsara erred in finding that the 119 Ward Street address was the home of Lyons' mother based only on Lyons' testimony and "without any documentation to prove this as fact"; (2) Lyons told the court on May 14, 2018, that she has no knowledge of her mother or her mother's landlords, who evicted her mother from 119 Ward Street in 2018; (3) Judge Bulsara erred in accepting Lyons' stated New York address as accurate when she had given a different, untruthful address on her driver's license; (4) Lyons bought a house in New Jersey in 2018 and has since used that address; (5) Lyons has been registered to vote in New Jersey since 2013 and pays taxes as a New York nonresident, and Lyons' pay stubs show two addresses, one of which is "falsified"; (6) Lyons told the Court that her address is confidential, but freely gave her New Jersey address in other court proceedings; (7) The New York Administration for Children's Services "found [Lyons] does not live nor reside part time at any location" in New York;[17] (8) Plaintiff is suing Lyons' mother, but the courts refuse to accept service at "the address"; and (9) in 2018, a court-appointed attorney for Plaintiff and Lyons' child stated that Lyons was "going state to state saying she lives in the other jurisdiction."[18] (Pl.'s Obj. 1–4.) Plaintiff requests a further hearing in which Lyons' mother and her landlords will testify as to Lyons' permanent address, and in which he will "get statements from [the New York address] where she claims to have lived." (*Id.* at 4.)

## II. Discussion

### a. Standard of review

**\*6** A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face

of the record. *See John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015) (applying clear error when no objections to the magistrate judge's report and recommendation were filed). The clear error standard also applies when a party makes only conclusory or general objections. *Fed. R. Civ. P. 72(b)(2)* ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under ...Fed. R. Civ. P. 72(b)." (quoting

⚑ *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

**b. Plaintiff has failed to show that in 2018 Lever was domiciled in New Jersey**

Plaintiff has not established by clear and convincing evidence that Lyons changed her domicile from New York to New Jersey. [19]

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. ⚑ *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). The statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and ⚑ 1332. Under the diversity jurisdiction statute, ⚑ 28 U.S.C. § 1332, federal courts have subject matter jurisdiction over state law claims where the plaintiff and defendant are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also* ⚑ *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' *i.e.*[,] all plaintiffs must be citizens of states diverse from those of all defendants.") (quoting ⚑ *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)); *Lovejoy v. Watson*, 475 F. App'x 792, 792 (2d Cir. 2012) ("The complaint alleged that [the plaintiff] and the defendant resided in New York, thereby precluding diversity jurisdiction.").

"For purposes of diversity jurisdiction, a party's citizenship depends on his domicile." *Davis v. Cannick*, 691 F. App'x 673, 673 (2d Cir. 2017) (quoting ⚑ *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). "Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another." *New Canaan Cap. Mgmt., LLC v. Ozado Partners LLC*, No. 16-CV-1395, 2017 WL 1157153, at *4 (S.D.N.Y. Mar. 25, 2017) (quoting *Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009)); *see also Caren v. Collins*, 689 F. App'x 75, 75 (2d Cir. 2017) ("Although the individual plaintiff and the individual defendants are alleged to be residents of certain States, such an allegation is insufficient to plead citizenship."). Moreover, "one may have more than one residence in different parts of this country or the world, but a person may have only one domicile." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (quoting *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004)).

**\*7** "One acquires a 'domicile of origin' at birth, which continues until a change in domicile occurs." ⚑ *Linardos*, 157 F.3d at 948 (quoting ⚑ *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). A person changes their domicile only when they take up residence in a new domicile and intend to stay. *Davis*, 691 F. App'x at 673. To determine whether an individual intends to stay in a particular state and effects a change in domicile, courts must look to the "totality of the evidence," considering, among other factors:

> current residence; voting registration; driver's license and automobile registration; location of brokerage and bank accounts; membership in fraternal organizations, churches, and other associations; places of employment or business; ... payment of taxes; ... whether a person owns or rents his place of residence; the nature of the residence (*i.e.*, how permanent the living arrangement appears); ... and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*New Canaan Cap. Mgmt., LLC*, 2017 WL 1157153, at *4 (alterations omitted) (quoting *Kennedy*, 633 F. Supp. 2d at

81). Whether a person intended to change his or her domicile from one state to another is a question of fact, and a "party alleging that there has been a change of domicile has the burden of proving the 'required intent ... to give up the old and take up the new domicile, coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.'"[20] *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (alterations omitted) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243–44 (2d Cir. 1984)).

The parties agree that Lyons resided, at least temporarily, at 119 Ward Street in New Jersey and used that address to receive mail, but Lyons' residence at that address does not establish that she was domiciled in New Jersey. *See New Canaan Cap. Mgmt., LLC*, 2017 WL 1157153, at *4 ("Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another." (quoting *Kennedy*, 633 F. Supp. 2d at 81)). Lyons' use of her mother's New Jersey address to receive mail, and her use of that address in court, does not contradict her testimony that at the time this lawsuit was filed, she divided her time between New Jersey and New York and did not intend to remain in New Jersey permanently. Similarly, her paying taxes as a New York nonresident does not establish that she intended to remain outside New York permanently, although (as Judge Bulsara recognized) it does provide some support for that conclusion. *See Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 51 (2d Cir. 2020) ("[T]he determination of domicile considers factors such as voting, taxes, property, bank accounts, [and] places of business or employment." (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991))); *Braten v. Kaplan*, No. 07-CV-8498, 2009 WL 614657, at *3 (S.D.N.Y. Mar. 10, 2009) (noting that where a person pays taxes is one of "a number of factors" relevant to the determination of that person's domicile), *aff'd*, 406 F. App'x 516 (2d Cir. 2011).

**\*8** Moreover, Lyons' residence and actions in 2018, including her ties to a New Jersey address that Plaintiff describes in his objections, are not dispositive of where she was domiciled when the lawsuit was filed in 2016. *See Dukes ex rel. Dukes v. N.Y.C. Emps.' Ret. Sys.*, 581 F. App'x 81, 82 (2d Cir. 2017) (looking to domicile at the time the action was commenced); *Borderud v. Riverside Motorcars, LLC*, No. 18-CV-1291, 2020 WL 2494760, at *4 n.3 (D. Conn. May 13, 2020) ("Because diversity is determined at the time the [c]omplaint is filed, the [c]ourt will disregard evidence

concerning events after [the plaintiff] filed his [c]omplaint.") (citing *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019)); *Chappelle v. Beacon Commc'ns Corp.*, 863 F. Supp. 179, 182 n.3 (S.D.N.Y. 1994) ("Because the relevant period for determining [the defendant's] domicile is the time the action is commenced, which in this case is December [of] 1992, evidence which is probative of [the defendant's] domicile after that date is not discussed.").

Other factors support the conclusion that Lyons was domiciled in New York at the time Plaintiff commenced this action. Lyons kept her vehicle registered in New York, voted in New York when she voted (although she was also registered to vote in New Jersey in the years surrounding the filing of the Complaint), and kept a New York driver's license, even though the address on that license was in dispute. *See Halbritter v. Stonehedge Acquisition Rome II, LLC*, No. 07-CV-3848, 2008 WL 926583, at *3 (S.D.N.Y. Apr. 2, 2008) (holding that factors supported the conclusion that the plaintiff was domiciled in New York and not Florida, including that "she was not registered to vote in Florida and had a New York driver's license and all her automobiles registered in New York"); *Kleiner v. Blum*, No. 03-CV-3846, 2003 WL 22241210, at *2 (S.D.N.Y. Sept. 30, 2003) (holding that, where the plaintiff intended to maintain residences in New York and his presumptive Georgia domicile in the long term, "that [the] plaintiff resides in New York, has adult children residing in New York, receives medical care in New York, receives his bills in New York, and maintains a pro bono office in New York[]merely show that, for the past three years, New York has been [the] plaintiff's principal place of residence" and did not establish New York as his domicile). In addition, Lyons lived with her mother rather than renting her own residence in New Jersey, and no evidence in the record suggests that Lyons planned to live there indefinitely to support her mother. *See Kennedy*, 633 F. Supp. 2d at 81 (holding "whether a person owns or rents his place of residence" is relevant to domicile); *cf. Dukes ex rel. Dukes v. NYCERS*, 2014 WL 583235, *2 (E.D.N.Y. Feb. 12, 2014) (holding that where plaintiff "expressed the intent to remain in Staten Island indefinitely to continue caring for her mother and working in New York City" that fact supported the conclusion she was domiciled in New York), *aff'd, Dukes ex rel. Dukes*, 581 F. App'x at 81. Given the conflicting evidence, Plaintiff has not succeeded in establishing that Lyons changed her domicile from New York, acquired at her birth, to New Jersey. *See Gold v. Katz*, No. 90-CV-7726, 1991 WL 237807, at *3 (S.D.N.Y. Nov. 4, 1991) ("There is a presumption favoring a former domicile over a newly

acquired residence." (first citing *Farrell v. Ashton*, No. 89-CV-6706, 1991 WL 29261, at \*5 (S.D.N.Y. Feb. 28, 1991); and then citing 13B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3612, at 535 (1984))).

Finally, many of Plaintiff's objections are to Lyons' credibility. Judge Bulsara observed Plaintiff and Lyons at the evidentiary hearing and found Lyons' testimony — including that the 119 Ward Street address was primarily her mother's apartment — to be credible. (R&R 12, 14–15.) Plaintiff has not presented sufficient reason to set aside this credibility determination. *See* 🚩 *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) ("[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge." (quoting 🚩 *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999))); *Imbruce v. Buhl*, No. 15-CV-554, 2016 WL 2733097, at \*2 (D. Conn. May 10, 2016) (evaluating

domicile "from the record and on the basis of the credible testimony of [witnesses] at the evidentiary hearing").

**\*9** Plaintiff has had a full opportunity to present evidence in support of his arguments that Lyons was domiciled in New Jersey at the commencement of this action and has failed to do so. The Court declines to grant Plaintiff further leave to amend the Complaint a second time.

### III. Conclusion

For the foregoing reasons, the Court adopts the R&R and dismisses the action without prejudice for lack of subject matter jurisdiction.

SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 302648

---

**Footnotes**

1    *Lever v. Lyons*, No. 16-CV-5130, 2018 WL 1521857 (E.D.N.Y. Jan. 2, 2018), *report and recommendation adopted*, 2018 WL 1089328 (E.D.N.Y. Feb. 26, 2018).

2    (*See* Tr. of Hr'g dated Mar. 21, 2019 ("Lever Tr."), Docket Entry No. 62; Tr. of Hr'g dated Apr. 3, 2019 ("Lyons Tr.") filed Apr. 5, 2019, Docket Entry No. 64.)

3    The case was reassigned to Judge Bulsara on September 5, 2017. (*See* Order dated Sept. 5, 2017.)

4    Judge Bulsara found that because Plaintiff and Lyons were domiciled in New York, the complete diversity necessary to support jurisdiction under 🚩 28 U.S.C. § 1332 did not exist. (2018 R&R 17.) The Court adopted the 2018 R&R. (Mem. and Order, Docket Entry No. 45.)

5    The Amended Complaint alleges that Plaintiff is a citizen of New York and that Lyons and Bogle are both citizens of New Jersey. (Am. Compl. 1–2.) Plaintiff seeks $350,000 "from both [D]efendants" and punitive damages to be determined by the Court. (*Id.* at 5.)

6    Because the Amended Complaint and its attachments are not consecutively paginated, the Court refers to the ECF pagination.

7    He also alleges that Bogle is domiciled in New Jersey, (Am. Compl. 2), which is not disputed.

8    Shawn Landrum is one of the landlords of the property in Orange, New Jersey. (Lever Tr. 32.) Plaintiff asserts that Landrum "just made up" the 119 Ward Street address and that property records establish that the proper addresses for the property are 121A and 121B Ward Street. (*Id.* at 31–32.)

9    (Tr. of Hr'g dated Mar. 13, 2013, at 40–47, annexed to Am. Compl. as Ex. D, Docket Entry No. 51; Tr. of Hr'g dated Aug. 27, 2014, at 4, 36–37, annexed to Am. Compl. as Ex. E, Docket Entry No. 51-1; Tr. of Hr'g dated July 1, 2016, at 72, annexed to Am. Compl. as Ex. F, Docket Entry No. 51-1.)

10   In a December 6, 2016, hearing before the New York Supreme Court, Kings County, the court noted that a New Jersey court was also hearing a dispute between Plaintiff and Lyons "on the abuse docket" and that the parties' child resided in New Jersey. (Tr. of Hr'g dated Dec. 6, 2016, at 4–6, annexed to Am. Compl. as Ex. G, Docket Entry No. 51-2.) During a March 13, 2013 hearing in the same case, the parties discussed whether the custody exchange of Plaintiff's and Lyons' child, not the legal proceedings, should be moved from New York to New Jersey. (Tr. of Hr'g dated Mar. 13, 2013, at 41–47.)

11   (Am. Compl. 3; Bills from CreditOne Bank and DirecTV, at 10–11, annexed to Am. Compl. as Ex. H, Docket Entry No. 51-2; 2015 Federal and Nonresident and Part-Year Resident State Tax Returns of Lyons, at 13–34, annexed to Am. Compl. as Ex. I, Docket Entry No. 51-2; Paystubs of Christina Lyons for Pay Periods Ending Aug. 31, 2015, Mar. 31, 2016, Apr. 15, 2016, and June 30, 2016, at 36–40, annexed to Am. Compl. as Ex. J, Docket Entry No. 51-2.)

12   (Am. Compl. 3; Dep't of Children and Families Investigation Summ. 42–55, annexed to Am. Compl. as Ex. K, Docket Entry No. 51-2.)

13   Plaintiff noted that Lyons was registered to vote in two states, and Judge Bulsara suggested that "voter rolls are notoriously incorrect" because they are not updated when people move. (Lever Tr. 30:21–31:3.) Plaintiff added that "[w]hen [he] went down to the Board of Elections in New York, they told [him] that [Lyons] took her name off New York State voting and she just recently put it back on in June of last year." (*Id.* at 33:2–5.) Plaintiff submitted Lyons' voter registration records, which showed that she registered to vote in New York in 2008 and 2017 but registered in New Jersey in the interim and is still registered there. (New Jersey Voter Registration Records ("New Jersey Voter Records") 51–54, annexed to Pl.'s Suppl. Submission on Def. Lyons' Residence as Ex. C, Docket Entry No. 67; New York Voter Registration Records, at 88–91, annexed to Pl.'s Suppl. Submission on Def. Lyons' Residence as Ex. I, Docket Entry No. 67.) There were no records of her having voted in New Jersey. (New Jersey Voter Records.)

14   Lyons provided both addresses to the Court but the information has been redacted from the public record. (Lyons Tr. 2:22–5:2.)

15   Lyons did not testify about the landlord's action against her in New Jersey or about her alleged use of a post office box as an address.

16   Plaintiff has submitted additional papers with his objections. Under Rule 72(b) of the Federal Rules of Civil Procedure, district courts have discretion to, among other things, "receive further evidence" in considering objections to a magistrate judge's recommended ruling. Fed. R. Civ. P. 72(b); *see also* 🚩 *Kazolias v. IBEW LU 363*, 806 F.3d 45, 54 (2d Cir. 2015) ("[T]he governing statute ... expressly provides that the district court [in reviewing objections to an R&R] 'may also receive further evidence.' " (quoting 🚩 28 U.S.C. § 636(b)(1))). In light of Plaintiff's *pro se* status, the Court considers the evidence submitted with his objections, which appears to be largely duplicative of previous submissions. *See Augustin v. Cap. One*, No. 14-CV-179, 2015 WL 5664510, at *2 n.2 (E.D.N.Y. Sept. 24, 2015) (considering additional evidence submitted with *pro se* plaintiff's objections to the magistrate judge's recommended ruling).

17   In a report produced by New York child welfare officials in November of 2018, investigators found that they could not ascertain Lyons' address because she lived in New Jersey and was uncooperative. (Nov. 1, 2018 Ct. Ordered Investigation 71, annexed to Pl.'s Obj. as Ex. O, Docket Entry No. 75.)

18    Plaintiff argues that Lyons contradicts herself by claiming that this Court lacks subject matter jurisdiction even as she brings counterclaims against Plaintiff in this Court. (Pl.'s Obj. 4.) Because subject matter jurisdiction is not waivable, Lyons did not waive defects in subject matter jurisdiction by asserting counterclaims in her answer. *See* ⚑ *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). In addition, based on Judge Bulsara's credibility determinations favoring Lyons, Plaintiff contends that "[t]he [C]ourt seem[s] to have taken a bias stand against [him]." (Pl.'s Obj. 1.) To the extent Plaintiff is making a "bias or partiality motion," the Court denies the application because "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," ⚑ *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing ⚑ *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)), and the finding that Lyons' testimony was credible does not reflect the sort of "deep-seated favoritism or antagonism" that would justify an exception to that rule, *id.*

19    Plaintiff does not object to the R&R's findings that Lyons was domiciled in New York at birth and that the claims against Bogle cannot be severed from the rest of the action. The Court has reviewed the unopposed portions of the R&R and, finding no clear error, the Court adopts those recommendations pursuant to ⚑ 28 U.S.C. § 636(b)(1).

20    The Second Circuit has clarified that "the factual questions that inform a determination as to federal jurisdiction need not be submitted to a jury and may be resolved by the [c]ourt." ⚑ *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42–43 (2d Cir. 2000) (first citing ⚑ *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 242 n.2 (2d Cir. 1984); and then citing ⚑ *Sligh v. Doe*, 596 F.2d 1169, 1171 (4th Cir. 1979)).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01108-DNH-ML    Document 5    Filed 09/29/23    Page 42 of 55

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

Case 3:23-cv-01108-DNH-ML   Document 5   Filed 09/29/23   Page 43 of 55

Brown v. Peters, Not Reported in F.Supp. (1997)

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); Schoolfield v. Dep't of Correction, 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); Vargas v. Keane, 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01108-DNH-ML    Document 5    Filed 09/29/23    Page 44 of 55

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

Brown v. Peters, Not Reported in F.Supp. (1997)

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), 🚩 *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." 🚩 *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable 🚩 § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. 🚩 *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); 🚩 *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (🚩 section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under 🚩 § 1983. 🚩 *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under 🚩 § 1983. 🚩 *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01108-DNH-ML    Document 5    Filed 09/29/23    Page 47 of 55

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    6

2022 WL 2390248
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christopher Javier VAZQUEZ Carbuccia, Plaintiff,

v.

State of NEW YORK and Schenectady
Family Court, Defendants.

No. 1:22-CV-196 (GTS/CFH)
|
Signed June 30, 2022

**Attorneys and Law Firms**

Christopher Javier Vazquez Carbuccia, 45 Arnold Ave., Apt.
2, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

**I. In Forma Pauperis**

**\*1** Plaintiff pro se [1] Christopher J. Vazquez ("plaintiff")
purported to commence this action on March 2, 2022, by
filing a complaint. See Dkt. No. 1 ("Compl."). Plaintiff did
not pay the filing fee or submit an application for leave to
proceed in forma pauperis ("IFP"). See id. Accordingly, the
Court administratively closed the case with an opportunity to
comply with the filing fee requirement. See Dkt. No. 2. The
Order directed plaintiff to either submit the full $402 filing fee
or complete an IFP application within thirty days of the filing
date of the Order. See id. at 1. The Order was filed on March
4, 2022. See id. Thus, plaintiff had until April 4, 2022, [2] to
timely pay the filing fee or file an IFP application. Plaintiff
was sent a copy of the Order by regular mail. On March 18 and
April 28, 2022, plaintiff contacted the Albany Clerk's Office
asking about the status of his case and he was informed that
he needed to submit his IFP application. Plaintiff submitted
an IFP motion on May 5, 2022, 31 days past the deadline set
forth in the administrative closure order. See Dkt. No. 3.

Despite plaintiff's untimeliness, given the fact that he
is proceeding pro se, and due to special solicitude, the
undersigned will consider this belated filing. Plaintiff has
previously failed to follow these filing requirements, but the

undersigned has nevertheless considered the IFP application.
See Vazquez v. Times Union Newspaper, 1:21-CV-1359
(DNH/CFH), Dkt. No. 5 at 1-2; Vazquez v. Hometown Health
Center, 1:21-CV-1371 (MAD/CFH), Dkt. No. 8 at 1-2. The
undersigned has reviewed plaintiff's present IFP motion and
determines that he financially qualifies to proceed IFP for the
purpose of filing. [3] See Dkt. No. 3.

**II. Initial Review**

**A. Legal Standard**

Section 1915 [4] of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed IFP, "the court
shall dismiss the case at any time if the court determines
that ... the action or appeal (i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It
is a court's responsibility to determine that a plaintiff may
properly maintain his complaint before permitting him to
proceed with his action.

**\*2** Where, as here, the plaintiff proceeds pro se, "the court
must construe his [or her] submissions liberally and interpret
them to raise the strongest arguments that they suggest."

Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir.
2014) (per curiam) (citation and internal quotation marks
omitted). This does not mean the Court is required to accept
unsupported allegations that are devoid of sufficient facts
or claims. Although detailed allegations are not required at
the pleading stage, the complaint must still include enough
facts to provide the defendants with notice of the claims
against them and the grounds on which these claims are based.

See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell
Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Pro se
litigants are "not exempt ... from compliance with relevant
rules of procedural and substantive law[.]" Traguth v.
Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).
Ultimately, the plaintiff must plead "enough facts to state a
claim to relief that is plausible on its face." Twombly,
550 U.S. at 570. "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the

misconduct alleged." 📁 Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." 📁 Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain,

the court has the power, on its own initiative ... to dismiss the complaint." 📁 Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See 📁 Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Plaintiff's Filing History [5]

**\*3** Plaintiff has a history of filing in the Northern District of New York, untimely IFP applications and complaints that are often dismissed at the pleading stage. The following recitation of plaintiff's filing history has been derived from Chief Judge Suddaby's Show Cause Order in case number 1:22-PF-2 (GTS), Dkt. No. 1 at 2-4:

1. Vazquez v. Dollar General Corp., 1:21-CV-0330 (BKS/CFH), Dkt. No. 14 (dismissing plaintiff's complaint without prejudice); Dkt. No. 15 (entering judgment dismissing plaintiff's complaint following his failure to file an amended complaint); see 2021 WL 4407817, at \*4 (N.D.N.Y. Sept. 27, 2021), motion for relief from judgment denied, 2022 WL 279560 (N.D.N.Y. Jan. 31, 2022). [6]

2. Vazquez v. Times Union Newspaper, 1:21-CV-1359 (DNH/CFH), Dkt. No. 2 (ordering administrative closure for plaintiff's failure to pay the filing fee or file an IFP motion); Dkt. Nos. 5, 7, 8 (granting plaintiff's belatedly filed IFP motion but dismissing the complaint with prejudice and without leave to amend for failure to state a claim or establish subject matter jurisdiction); see 2022 WL 837474, at \*4 (N.D.N.Y. Mar. 1, 2022), report and recommendation adopted, 2022 WL 833370 (N.D.N.Y. Mar. 21, 2022).

3. Vazquez v. Hometown Health Center, 1:21-CV-1371 (MAD/CFH), Dkt. No. 2 (ordering administrative closure for plaintiff's failure to pay the filing fee or file an IFP motion); Dkt. No. 8 (granting the belatedly filed IFP application and recommending dismissal of the complaint for failure to establish subject matter jurisdiction or state a claim); see 2022 WL 2304213, at \*6 (N.D.N.Y. June 27, 2022).

4. <u>Vazquez v. St. Mary's Healthcare</u>, 1:22-CV-0317 (GTS/ TWD), Dkt. No. 2 (ordering administrative closure for failure to pay the filing fee or file an IFP motion); Dkt. No. 7 (recommending dismissal of the complaint for failure to state a claim or establish subject matter jurisdiction); <u>see</u> 2022 WL 1659194, at *4 (N.D.N.Y. May 25, 2022); Dkt. Nos. 9, 10 (dismissing plaintiff's complaint without prejudice and without leave to amend).

Based on these filings, and plaintiff "becom[ing] increasingly abusive when communicating with Court staff[,]" on May 2, 2022, Chief Judge Suddaby ordered plaintiff to, within fourteen days, "show cause, in writing, why he should not be enjoined from filing any future pleadings or documents of any kind (including motions) in the Northern District of New York *pro se* without prior permission of the Chief Judge or his or her designee[.]" <u>In re: Christopher J. Vazquez</u>, 1:22-PF-002 (GTS), Dkt. No. 1 at 4, 8. Plaintiff did not respond within fourteen days and on May 23, 2022, Chief Judge Suddaby entered a pre-filing injunction pursuant to 28 U.S.C. § 1651(a), permanently enjoining plaintiff from filing any documents in the Northern District without prior permission of the Chief Judge or his or her designee. <u>See id.</u> at Dkt. No. 2. Plaintiff's filings in the present matter were filed prior to Chief Judge Suddaby's imposition of the injunction and, as such, the undersigned will proceed to review the complaint's sufficiency under the § 1915 standard. <u>See id.</u> at 7 ("[N]othing in this Pre-filing Order ... affects his rights in any of his currently pending actions[.]").

### C. Plaintiff's Complaint

**\*4** Plaintiff's "complaint" is a one-page handwritten letter stating that he is "suing the State of New York for the mishandling of [his] case in the 'Schenectady County Family Court System.' " Compl. (emphasis omitted). Plaintiff asserts that the Schenectady County Family Court "completely ignored all the information [he] gave them, and allowed an enraged vindictive girl, to take control of [his] daughter." <u>Id.</u> Plaintiff also seeks to sue "the State of New York for defamation, emotional distress, and abuse of power. There were dishonorable restraining orders put in play [sic], all [he] believe[s], on the State[']s data, pass data. No proper vetting process on the State[']s behalf." <u>Id.</u> (emphasis omitted). Plaintiff contends that "[t]he State made it extremely easy

for this vindictive, stressed, enraged girl, to literally walk in and put a man[ ] through a gruesome process that is not only predicated on vindiction [sic] but also a bias, skewed perspective." <u>Id.</u> Plaintiff states that he "want[s his] hearing by August 18th. [He] want[s] 2.5 million USD from the State for their incompetence." <u>Id.</u>

On May 5, 2022, plaintiff submitted a copy of a Complaint and Summons from the Supreme Court of the State of New York, County of New York. <u>See</u> Dkt. No. 4. Plaintiff crossed off "New York" as the county, and hand-wrote, "Schenectady." <u>Id.</u> at 1-2. Plaintiff named the Schenectady County Family Court in the Complaint and Summons, and wrote that, "[o]n and/or, around, the Duration of 4/13/2020 – 9/17/21, also carrying into 2022 year, today's date 4/18/22 the Defendant(s), approved ILLEGAL restraining orders that prevented me from seeing my daughter and still is." <u>Id.</u> at 2. Plaintiff states that "[t]he Defendant(s), refused to accept my wishes with unjustifiable means. Schenectady County and it's associates, have went Rogue I believe with bad intent, and I am here to be compensated for their doing, nothing more, nothing less." <u>Id.</u>

Plaintiff also submitted a letter seeking diplomatic immunity and "to take an oath, to insure [sic] confidentiality[.]" Dkt. No. 5. Plaintiff filed this same letter in his other cases filed in the Northern District. [7] Finally, plaintiff submitted a letter seeking "7 Billion USD for the State's ... Abuse of power in 'Schenectady County Family Court' And also in a case that '[he] was involved in' ... in 2013...." Dkt. No. 6. Included with the letter, is an Albany County 2013 Certificate of Conviction for attempted criminal possession of contraband or narcotics in which plaintiff received five years' probation, his driver's license was suspended, and he had to pay a "Mandatory Surcharge of $325.00[.]" <u>Id.</u> at 2.

### D. Analysis

#### 1. Subject Matter Jurisdiction

As an initial matter, plaintiff's purported complaint fails to establish this Court's subject matter jurisdiction. <u>See</u> Compl. Subject matter jurisdiction can be established either through federal question or diversity jurisdiction. Under 28 U.S.C. § 1331, a case "arising under the Constitution, laws, or treaties of the United States[ ]" is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State

sues a citizen of another State, and the amount in controversy is more than $75,000, is a diversity case. If the Court has subject matter jurisdiction over federal claims, the Court may choose to exercise supplemental jurisdiction over any state law claims. See 28 U.S.C.A. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy....").

Plaintiff has not named a Constitutional provision or federal law under which he seeks to bring his claims; therefore, he has not established federal question jurisdiction. See Compl; see, e.g., Wray-Davis v. N.Y. Methodist Hosp., No. 16-CV-1618 (NGG/CLP), 2016 WL 1441332, at *2 (E.D.N.Y. Apr. 8, 2016) ("[T]he Complaint suggests no basis for federal-question jurisdiction, as [the p]laintiff is not suing under the Constitution or any federal laws. Instead, [the p]laintiff alleges malpractice, which is a state law claim."). Similarly, plaintiff has not purported to sue a citizen of a different state; therefore, diversity jurisdiction does not exist. See Compl. As subject matter jurisdiction has not been established, the Court cannot then exercise supplemental jurisdiction over any purported state law claims such as plaintiff's reference to "defamation." Id.; see Kolari v. New York Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (citing 28 U.S.C. § 13672(c)(3)) (explaining that the district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed). Accordingly, as plaintiff has not established this Court's jurisdiction, the undersigned recommends dismissing the purported complaint without prejudice. See Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").

**\*5** Even if the undersigned were to liberally construe the purported complaint as alleging a due process violation pursuant to 42 U.S.C. § 1983 as plaintiff states that his family court case was "mishandled," such a claim would necessarily fail as the State of New York and Schenectady County Family Court are immune from suit. Compl.; cf. Amato v. McGinty, No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at *6 (N.D.N.Y. June 6, 2017), report and recommendation adopted, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017) (citations omitted) ("To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted 'under color of state law.' ").

### 2. Eleventh Amendment Immunity

"Under clearly established law, the Eleventh Amendment provides states immunity in federal court." Johnson v. Fischer, No. 1:19-CV-1384 (TJM/DJS), 2020 WL 758964, at *2 (N.D.N.Y. Feb. 14, 2020) (citing Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)). "As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Allessi v. N.Y. State Dep't of Corr. & Cmty. Supervision, 16 F. Supp. 3d 221, 225 (W.D.N.Y. 2014) (citations omitted). "It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity." Mamot v. Bd. of Regents, 367 F. App'x. 191, 192 (2d Cir. 2010) (summary order) (internal citations omitted). Accordingly, plaintiff cannot bring this action against the State of New York.

Moreover, "[t]he Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.' " McGinty v. New York, 251 F.3d 84, 95 (2d Cir. 2001) (citations omitted); see McKnight v. Middleton, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011) (citations omitted) ("[T]he New York State Unified Court System is entitled to sovereign immunity as an 'arm of the State.' "). The Schenectady County Family Court is a part of the New York State Unified Court System and is entitled to sovereign immunity. See Yi Sun v. Saslovsky, No. 1:19-CV-10858 (LTS), 2020 WL 6828666, at *3 (S.D.N.Y. Aug. 6, 2020) (collecting cases) ("The New York Family Courts ... are arms of the State of New York and enjoy Eleventh Amendment immunity."). Accordingly, had plaintiff established subject matter jurisdiction, his purported claim against the Schenectady County Family Court would have to be dismissed.

### 3. Additional Letters

Plaintiff's letter seeking "Diplomatic Immunity[,]" is baseless as plaintiff is not a diplomat. Dkt. No. 5; see Swarna v. Al-Awadi, 622 F.3d 123, 133 (2d Cir. 2010) (quoting Vienna Convention art. 31(1)) ("[A] 'diplomatic agent shall enjoy immunity from the criminal ... civil and administrative jurisdiction' of the receiving state."). Further, to the extent plaintiff's May 6, 2022, letter references a 2013 conviction, he did not include information concerning the conviction in his purported complaint, his letter does not provide any information as to the relief he seeks in relation to the conviction, and he does not explain how an Albany County conviction relates to the State of New York or its "vetting process" of his Schenectady County Family Court case. Compl.; see Dkt. No. 6; see also 28 U.S.C. § 1915A ("[T]he court shall [ ] dismiss the complaint ... if the complaint [ ] is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]"). Accordingly, such claims could not stand even if plaintiff had established jurisdiction.

### III. Opportunity to Amend

**\*6** Generally, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)). "[L]ack of subject-matter jurisdiction is generally viewed as a substantive defect." Planck v. Schenectady Cnty., No. 1:12-CV-0336 (GTS/DRH), 2012 WL 1977972, at \*6 (N.D.N.Y. June 1, 2012) (footnote omitted). As plaintiff has not established jurisdiction, the purported defendants are immune from suit, and in light

of the problems in plaintiff's filing history, the undersigned recommends dismissing plaintiff's complaint without leave to amend. See, e.g., St. Mary's Healthcare, 2022 WL 1659194, at \*4 (citing Johnson v. Progressive.com, 19-CV-11202 (CM), 2020 WL 589127, at \*1 (S.D.N.Y. Feb. 5, 2020) (declining to grant *pro se* plaintiff leave to amend in light of the plaintiff's "abusive litigation history" and where amendment would be futile)); see also Times Union Newspaper, 2022 WL 833370, at \*1 (dismissing with prejudice and without leave to amend).

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 3) will be considered, and, upon consideration, is **GRANTED** for purposes of filing only; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [8]

**All Citations**

Slip Copy, 2022 WL 2390248

### Footnotes

1   Pro se means "to appear for one's self" or that a person is not represented by an attorney or another person. Iannaccone v. L., 142 F.3d 553, 558 (2d Cir. 1998).

2   Thirty days from March 4, 2022, was April 3, 2022. However, April 3, 2022, was a Sunday; therefore, plaintiff had until the April 4, 2022, to timely file the IFP application. See FED. R. CIV. P. 6(a)(1).

3   Plaintiff is advised that although he has been granted IFP status, he is still required to pay any costs and fees that he may incur in this matter, including, but not limited to, any copying fees or witness fees.

4   The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

5   All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

6   Although the undersigned provides the Westlaw citations for plaintiff's other cases in the Northern District, copies have not been provided to plaintiff as he was provided copies by certified and/or regular mail when the orders or decisions were filed.

7   See Dollar General Corp., 1:21-CV-330, Dkt. No. 32; Times Union Newspaper, 1:21-CV-1359, Dkt. No. 10; Hometown Health Center, 1:21-CV-1371, Dkt. No. 6; St. Mary's Healthcare, 1:22-CV-317, Dkt. No. 6.

8   If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

2022 WL 3100553
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christopher Javier VAZQUEZ CARBUCCIA, Plaintiff,

v.

State of NEW YORK; and Schenectady
County Family Court, Defendants.

1:22-CV-0196 (GTS/CFH)
|
Signed August 4, 2022

**Attorneys and Law Firms**

CHRISTOPHER JAVIER VAZQUEZ CARBUCCIA,
Plaintiff, Pro Se, 45 Arnold Avenue, Apt. 2, Amsterdam, New
York 12010.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

 **\*1**  Currently before the Court, in this *pro se* civil
rights action filed by Christopher Javier Vazquez Carbuccia
("Plaintiff") against the State of New York and Schenectady
Family Court ("Defendants") is United States Magistrate
Judge Christian F. Hummel's Report-Recommendations
recommending that Plaintiff's Complaint be dismissed

without prejudice and without prior leave to amend for lack
of subject-matter jurisdiction. (Dkt. No. 8.) [1] Plaintiff has not
filed an objection to the Report-Recommendation, and the
deadline by which to do so has expired. (*See generally* Docket
Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Hummel's thorough Report-
Recommendation, the Court can find no clear-error in
the Report-Recommendation. [2] Magistrate Judge Hummel
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein, and Plaintiff's
Complaint is dismissed without prejudice and without prior
leave to amend.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-
Recommendation (Dkt. No. 8) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is
**DISMISSED** without prejudice and without prior leave to
amend.

**All Citations**

Slip Copy, 2022 WL 3100553

**Footnotes**

1    The Court notes that, although Plaintiff was enjoined from litigating civil actions pro se in this District, that
     injunction was issued after he filed his Complaint in this action on March 2, 2022, and thus does not apply to
     this action. *In re: Christopher J. Vazquez*, 22-PF-0002, Pre-Filing Order, at 1-3 (N.D.N.Y. filed May 23, 2022).

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to
     only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing
     such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record
     in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at
     *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's]
     report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal
     quotation marks omitted).

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.